**WESTERN TRANSPORT CORP.**

v.

**FRANK L. THOMAS, Inc.**

No. 14782.

Court of Civil Appeals of Texas.

Dallas.

June 4, 1954.

Rehearing Denied July 2, 1954.

Edwin T. Phillips, Jr., Fort Worth, for appellant.

Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellee.

YOUNG, Justice.

The suit in trial court was for alleged breach of a written lease of motor vehicles executed by and between appellant as lessor and Frank L. Thomas, Inc., as lessee, on June 1, 1950. Damages were alleged at $25,000; but for primary determination in said action was a construction and interpretation of the lease instrument sued upon. The case was first filed in Tarrant County, corporate residence of appellant, but transferred to Dallas County on sustaining of plea of privilege. On trial to a jury and at conclusion of testimony, motions for peremptory instruction were urged by each party. Upon consideration of motions, that of appellee was sustained; resulting in a withdrawal of cause from the jury and ren-

dition of a defendant's judgment from which this review is sought.

Points of appeal complain, in effect, of the trial court's error: (1) In grant of defendant's peremptory instruction; (2) in failing to render a plaintiff's judgment on like motion; and (3, alternatively) in failing to require jury determination of damages in appropriate issues.

Background of the controversy involving lease of four truck units will be outlined briefly: Appellee corporation will be referred to herein as Thomas, and appellant as Western Transport (corporate name of which in 1950 was McFarland Trucking Co., Inc.). Thomas was in the business of leasing trucks to a single customer, Certain-Teed Products Corporation, all seventeen of its trucks being so employed with payment for use of each at $0.17 per mile. In 1950 Certain-Teed Products was in need of additional trucks and Thomas set about to provide them, though not required to do so, considering it "good business." The Western Transport lease was then consummated in almost identical terms of the existing Thomas-Certain-Teed lease (dated Sept. 1, 1948, of three years duration); The Transport lease of four trucks to run for a concurrent period, or to Sept. 1, 1951, each instrument cancelable on 30 days written notice. In appellant's contract it was expressly stated that its trucks were turned over to Thomas for the purpose of re-leasing them to Certain-Teed under the 1948 lease, the consideration to Western Transport for their use to be $0.17 per mile—the same figure that was paid by Certain-Teed under the Thomas lease.

After execution of appellant's lease to Thomas, the latter's maximum operation consisted of 21 trucks, 17 belonging to Thomas and the four of Western Transport; the Thomas trucks, however, being larger and heavier, of different make, and more desirable for the purposes of Certain-Teed Products. In September 1950, there came on a gradual diminution in the business of Certain-Teed and less need for trucks; or as Mr. Titsworth, its manager, stated: "* * * our business had dropped off to where we had more trucks than we had business. And we had to take some trucks off for the reason that we hire the drivers ourselves, and we pay them, and we guarantee them a certain amount per week, and it was getting to the point that we could not get that much miles on each unit, and so all we could do was to reduce the number of trucks"; informing Thomas that four trucks had to be dropped. Appellee, in turn, so informed Western Transport, which concern in a few days picked up its trucks, releasing them shortly to another truck user, The Tex-Crete Company. Still later and during 1951, Certain-Teed continued to suffer a decrease in business, requiring further reduction of freight units employed, and additional trucks belonging to Thomas were laid off; the number in use per week going down from the maximum of 21 to as little as nine units for some weeks; and the average number of trucks in use by Certain-Teed after discontinuance of the four Western Transport vehicles and for the year 1951 was 11.6 units.

The lease between appellant and appellee contained many provisions not material here; for instance, recitals as to payment of accounts, maintenance and repair of vehicles, stipulations against liability for damage to cargo, violation of ordinances, etc.; making the Certain-Teed lease a part thereof; providing in paragraph 2 that: "The lessee under this lease, Frank L. Thomas, Inc., agrees to re-lease the equipment leased to it herein to Certain-Teed Products Corporation under the same terms and conditions set out in the attached lease, and by virtue of the authority and contract rights granted it in such attached lease, Frank L. Thomas, Inc., agrees to impose upon Certain-Teed Products Corporation all of the duties, responsibilities and liabilities assumed by said Certain-Teed Products Corporation under said attached lease, just as if the equipment leased hereby, and re-leased to Certain-Teed Products Corporation, was the property of Frank L. Thomas, Inc., and supplied by it to Certain-Teed Products Corporation under the terms of the attached

lease." Both leases recited that: "* * * Lessee shall have full right of possession and control of the motor vehicular equipment covered hereby to the same extent as if it were the legal owner thereof, * * *." Paragraphs 13, 15, and 16 are quoted in full: "(13) It is agreed that lessee shall not allow this equipment to be used for any purpose other than the lawful use permitted Certain-Teed Products Corporation under the attached contract, in the service of Certain-Teed Products Corporation from and to its plant at Miller, Texas, and only in the following states—Arkansas, Colorado, Louisiana, New Mexico, Oklahoma and Texas. In the event lessee hereunder should desire to authorize Certain-Teed Products Corporation to operate in states other than the foregoing, it may do so by agreement made with McFarland Trucking Company, Inc., and by making adjustment with McFarland Trucking Company, Inc., for the additional tax, license and fee, if any, for doing so. (15) If for any reason, except for mechanical or equipment failure, the fleet of equipment enumerated in this contract, fails to average 500 miles per tractor-trailer unit per week, for any four consecutive weeks, the lessor may reduce the number of units in the fleet to the extent the remaining units in the fleet will average 500 miles per week. (16) It shall not be considered good and valid reason for the termination of this lease by lessee, Frank L. Thomas, Inc., that said lessee is hereafter able, because of the acquisition of additional equipment and units by it not now leased hereunder or under the terms of the attached contract, to substitute such equipment for the equipment leased by McFarland Trucking Company, Incorporated to Frank L. Thomas, Incorporated under this lease and described in the attached schedule, it being understood by the parties hereto that the equipment now leased by Frank L. Thomas, Inc., to Certain-Teed Products Corporation under the terms of the attached contract, and the equipment leased under this contract by McFarland Trucking Company, Incorporated to Frank L. Thomas, Incorporated, and to be released by it to Certain-Teed Products Corporation, shall remain under lease and subject to the terms and conditions of each of said contracts, until their valid termination."

While the lease was for a definite term, there was no minimum rental provision contained therein; and undoubtedly both parties in the use of their trucks, were dependent on Certain-Teed and its ebb and flow of business. Such is obvious from contract recitals allowing Certain-Teed full control and possession of the trucks required for operation; paragraph 15 giving "lessor" under each lease the right to reduce the number of trucks in operation if their respective equipment failed to average 500 miles per week, to the end that the remaining units would average such mileage. And while there is in paragraph 16 a restriction against Thomas's acquiring additional equipment in substitution for the four under lease from appellant, the writing is silent relative to ensuing rights of the parties in event all the units be not required by Certain-Teed operations.

From the facts as above generally outlined, it is appellant's contention that, being bound in a term lease to furnish the trucks (though with no minimum rental requirement), it became entitled to a preference on decrease of Certain-Teed's business under a formula thus stated: That impliedly, at least, Thomas became obligated to use the four Western Transport units as long as any units were required under the Certain-Teed lease, three of them, if only three were required, or one of them if only one were required; Thomas returning to use of its own trucks when Certain-Teed's use of trucks again exceeded the four-unit level; it being further argued that on a basis of equity was not Thomas required "to prorate the loss in business, at the approximate ratio of four to one in its favor, leading to a situation whereby for every four unit drop in business, Thomas would be entitled to remove one Western Transport unit from the job?" Appellant's counsel graphically states its position in the following argument: That "* * * because appellee made a binding, final and entirely unambiguous lease for a definite term, never lawfully cancelled as to appellant, whereby it agreed to devote the four Western

Transport Units to the job, without reserving a right to eliminate them, cease their use or even pro-rate loss because of a drop in business, that appellee's units should have come 'off of the bottom' and not 'off of the top,' and that appellee by 'preferring' its own units under these circumstances, is liable to appellant for the rental its units would have earned had they been used as appellant believed when it purchased the units for that purpose."

We conclude, from careful study of this contract and the obligations assumed thereunder by appellee, that the points of error as presented must be overruled. Admittedly, appellant drew the instrument in suit, and having failed to include therein such a covenant of preference as to use of its own trucks, none will be implied.

Furthermore, it must be borne in mind that the call for reduction in use of trucks came from Certain-Teed and not from appellee; in which connection it is the testimony of Mr. Titsworth of the latter concern that for several enumerated reasons the Thomas cargo units were preferable for their use over those of appellant. The argument of counsel above quoted, carried to logical conclusion, would have taken the Thomas trucks off the road if Certain-Teed's business were reduced to the use of only four truck units, a contingency which surely would have appeared in the lease if obligatory on Thomas; the testimony of Thomas being, on the other hand, not denied by appellant's President, that such an eventuality was not mentioned in their contract negotiations. Not only this, but the language of paragraph 16 of the lease expressly militates against appellant's theory of recovery. For, if it be true that under the contract, in case of diminished business Western Transport trucks were required to come "off the bottom" and not "off the top," there would have been no need for the prohibition against the purchase of "additional" trucks by Thomas in substitution for the four Western Transport units. "Expressio unius est exclusio alterius."

The principle of law applicable to the instant controversy is well stated by counsel for appellee in the following (emphasis supplied): "Upon analysis it becomes apparent that the contract between Western Transport and Thomas is not the ordinary type of lease for a definite term at a definite consideration and that it is not even a true bi-lateral contract in the ordinary sense. When the terms are sifted down to their essentials it is actually what is sometimes called an *illusory contract*. Western Transport promises to furnish the trucks and Thomas promises to pay 17¢ per mile for each mile they are operated by Certain-Teed, but there is no promise to operate them for any minimum number of miles or that they will be operated at all. Thus when we look behind the form of the contract they are not actually mutually binding promises. *The contract is in a sense uni-lateral and does not become enforceable except insofar as the absence of mutuality is afterwards supplied by execution.* Thus when any use is made of the trucks the obligation to pay for it in accordance with the terms of the contract becomes binding, but since there is no minimum mileage or minimum use requirement there is no obligation to make any use at all and therefore, no obligation to make any payment at all until use has occurred and it is then enforceable only as to the past use." Davis v. Phillips A. Ryan Lumber Co., Tex. Civ.App., 248 S.W. 448; Tyler Ice Co. v. Coupland & Norman, 44 Tex.Civ.App., 383; 99 S.W. 133; Ben C. Jones & Co. v. Gammel-Statesman Pub. Co., Tex.Civ.App., 94 S.W. 191; Johnson v. Breckenridge-Stephens Title Co., Tex.Com.App., 257 S.W. 223; Fourche River Lumber Co. v. Ezell, 137 Ark. 270, 208 S.W. 298; Incorporated Town of Laurens v. Northern Iowa Gas & Elec. Co., 8 Cir., 282 F. 432; Blair Engineering Co. v. Page Steel & Wire Co., 3 Cir., 288 F. 662. And here there has been full payment under the contract to the extent of past execution, i. e., Thomas has paid 17¢ for every mile the Western Transport trucks were operated by Certain-Teed.

Judgment of the trial court must accordingly be affirmed.