**J. R. HAMILTON, d/b/a Hamilton Cartage Company, Appellant,**

v.

**HERRIN TRANSPORTATION COMPANY, Appellee.**

No. 3770.

Court of Civil Appeals of Texas.

Waco.

Dec. 30, 1960.

Rehearing Denied Jan. 19, 1961.

C. M. McDonald, Waco, for appellant.

Ralph W. Pulley, Jr., Dallas, for appellee.

WILSON, Justice.

Appellant entered into a commission agency contract with appellee under which appellant was to pick up freight tendered to appellee in Waco for transportation, and issue bills of lading in the latter's name. The contract contained a provision by which appellant indemnified appellee against loss "on account of destruction or damage to freight caused by, or resulting from any act or omissions, negligent or otherwise," of appellant.

Under this contract appellant loaded a shipment of merchandise on appellee's trailer in Waco, destined for Georgia. Appellee transported it to Memphis, Tennessee, where the merchandise was re-loaded into another trailer for further transportation by a connecting carrier. At Memphis appellee noted damage to the shipment, consisting of a number of mashed cartons and all cartons being soiled with carbon black. The consignee made claim against the connecting carrier for the damage. Appellee, as originating carrier, settled the claim with consignee; and thereupon notified appellant that unless reimbursement was made under the indemnity provision, the agency contract would be cancelled. Upon appellant's failure to make payment, appellee did undertake to terminate the contract.

Appellant thereupon sued appellee for damages for alleged breach of the contract and recovered damages in a non-jury trial. This phase of the case will be subsequently noticed. Appellee filed a cross-action alleging payment of the freight damage claim, and seeking judgment under the indemnity provision for the amount paid by it to the consignee. It recovered this judgment, which was offset, and judgment for the excess was rendered in favor of appellant.

 Appellant says there was insufficient evidence, or none, to support the court's findings that any act or omission on his part caused the damage for which appellee claimed indemnity; or as to the amount or extent of any damage resulting from any act or omission on his part.

There is evidence supporting the court's determination that appellant's failure to clean the trailer he loaded so as to remove carbon black, before placing 271 cartons of merchandise in it, was a cause of some of the damage for which the consignee may have made claim to the connecting carrier. But there is no competent evidence of probative force from which the cause of some 90 cartons being "mashed" can be reasonably deduced or attributed to appellant's acts or omissions. Neither is it possible from the evidence to even speculate as to how much of the claimed damage resulted from "mashed" cartons, and how much was due to soiling of cartons.

There is no evidence in the record as to the value of the merchandise before or after it was damaged. Appellee's evidence was that consignee made a claim to the connecting carrier for $2,248.99; that appellee settled the claim by paying consignee this amount, less freight: a net of $1,955.-64, for which the court rendered judgment. Appellee's position is that when it proved payment of the claim in good faith, "appellant became bound under the contract, as a matter of law, to reimburse appellee for such loss, without the necessity of making any other proof relative to the amount of the loss."

The position is untenable. In Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375, the same contention was made in a somewhat analogous subrogation claim where the insurer had paid insured under a fire insurance policy. The insurer contended that when it established defendant was liable for the loss, it was unnecessary to show the amount of damage to the insured property. The Supreme Court rejected the contention, holding that the measure of damage was not the amount paid by the party primarily liable, but the difference between the reasonable cash market values of the property immediately before, and immediately after it was damaged. The fact that appellant in our case agreed to indemnify appellee from "loss or damage suffered or incurred" by it, does not alter the application of the general rule; for the extent of appellant's liability is not necessarily the amount voluntarily paid by appellee, even though paid in good faith. The payment was made by appellee before appellant even had notice the consignee had made a claim, and appellee was required to show "the reasonableness of the amount which it paid" for loss incurred, caused by some act or omission of appellant. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 779; Gulf, Colorado & Santa Fe Ry. Co. v. McBride, Tex.Sup., 322 S.W.2d 492, 496.

██ Appellee, by cross-points, attacks that portion of the judgment against it by which the court assessed damages for loss of profits sustained by appellant during a 90-day period following termination of the agency contract.

The agency agreement provided that appellee "desires to engage the services of" appellant "to pick up and deliver freight either originating at, or consigned to" Waco. Appellant agreed to pick up and accept all truck-load traffic tendered to appellee within its terminal area. Appellee

agreed to compensate appellant for these services at a fixed rate. Appellee's standard form contract, as originally drafted by it, provided it could be terminated by either party upon 30 days' written notice. Because appellant was required to invest in additional equipment to perform the services, a 90-day termination notice provision was substituted.

Appellee says the contract was unilateral, and therefore, the fact that it admittedly terminated the contract without giving the 90-day notice did not authorize the court to assess damages for loss of profits during the 90-day period following termination. It says that it could have simply ceased to use appellant's services with impunity, without giving any termination notice, because it had no obligation under the agreement to furnish any freight traffic to appellant.

Appellee relies on Western Transport Corp. v. Frank L. Thomas, Inc., Tex.Civ. App., 270 S.W.2d 226, writ ref., n. r. e. The case is distinguishable on several grounds, not the least of which is, that there the parties were dependent on a single fluctuating supply of business—not from the lessee, but from a third party—a single business concern. The court there turned construction on the fact that since appellant had drawn the instrument, and had omitted an obligation to supply business, none would be implied. There the lessor of trucks contended that when the third party's business decreased so as to require fewer trucks, the lessor's trucks should be used, rather than lessee's. The decision hinged, therefore, on the fact the lessee had no control over existence of cargo for which lessor's trucks were to be used.

The rule presently applicable is otherwise. Where one person obligates himself to perform services for another, as here, an obligation on the part of the other party to supply the subject matter of the contract will be implied. Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181; Clement v. Producers' Refining Co., Tex.Com.App., 277 S.W. 634, 636; Chicago, R. I. & G. Ry. Co. v. Martin, Tex.Civ.App., 163 S.W. 313,

writ refused; 13 Tex.Jur.2d Sec. 89, p. 237. The contract was not lacking in mutuality, and the court did not err, under the record, in the respects complained of by appellee.

 If the incidents of setoff and counterclaim were not involved, we might be authorized to affirm that portion of the judgment in appellant's favor; but under the provisions of Rule 302, Texas Rules of Civil Procedure, "judicial deduction of the smaller from the larger amount and award of recovery (to the party entitled) of the balance" is required. The elements of the case are not severable; and we are required, we think, to remand the entire case. Nalle v. Harrell, 118 Tex. 149, 12 S.W.2d 550, 551; Manley v. Razien, Tex. Civ.App., 160 S.W.2d 995. The judgment is reversed and the cause remanded.