**Antonio HOLGUIN, Individually and d/b/a Holguin Enterprises, Appellant,**

v.

**TWIN CITIES SERVICES, INC., Appellee.**

No. 08–87–00269–CV.

Court of Appeals of Texas, El Paso.

March 23, 1988.

---

Jerry Severson, El Paso, for appellant.

Jeffrey B. Thompson, Thompson, Anderson & Wyrick, P.C., El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and FULLER, JJ.

## OPINION

SCHULTE, Justice.

This is a summary judgment case concerning delivery of freight pursuant to a contract. The trial court found the contract was illusory and not enforceable. We reverse and remand for trial.

The contract was entered into on December 28, 1983. Almost eight months later, Appellee presented the following addendum to the contractor for signature:

> Contractor expressly agrees not to operate within 75 miles as the crow flies from El Paso International Airport for any Cartage Company or Air Freight Forwarder. Contractor also agrees not to contract to or work for any company in competition with Twin Cities or Burlington Northern for a period of twelve months in either air freight or pick up and delivery.

When the contractor declined to alter a contract already in operation for over seven months, Appellee refused to provide Appellant with any further freight deliveries and unilaterally terminated the agreement. The original contract, which Appellee says was not binding on it, is some nine legal pages in length and extends for a term of three years beginning December 28, 1983. Appellee's name is part of the printed form and "Holguin Enterprises" is handwritten into the blank. Under its provisions, "[t]he areas to be covered will be dictated by dispatch, either by phone or by radio to best facilitate the use of Contractor's vehicles." Under the agreement, among other things, the contractor was required to paint his vehicles white and place Burlington Northern decals thereon. Uniforms furnished by Appellee were to be worn by the contractor's driver or drivers and the contractor was required to have vehicles and drivers available Monday through Saturday with one available and on call Sundays and holidays.

Since there was no set amount of freight to be provided nor specificity regarding frequency or area other than that "dictated by dispatch," Appellee insists that the contract was illusory. Appellant responds the agreement was a mutually binding obligation. It appears to us that the controlling question is one of construction, that is, does the contract imply an obligation on Appellee's part to present freight to Appellant for cartage, or does the contract, as Appellee contends, amount to no more than an obligation on Appellee's part to pay Appellant at the specified rates for such freight as should in fact be presented to Appellant and actually be transported.

In an early Texas case, the court considered mutuality of obligation. And although in that case there existed a definitive "all" that is lacking here, the principle remains the same. The court said in part, "[t]he contract at least imported obligation on appellant's part not to give to another during its continuance the right that must have been contemplated by both parties thereto at the time of its execution." *Chicago R.I. & G. Ry. Co. v. Martin*, 163 S.W.

313 (Tex.Civ.App.—Fort Worth 1913, writ ref'd).

In a later instance where a utility company had contracted to deliver natural gas but the utility assumed no obligation regarding the quantity or quality, the Supreme Court reversed the civil appeals court's holding that the contract was unenforceable for lack of mutuality of obligation. Justice Steakley, writing for the Court and citing from *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101 (1923), wrote:

> "Reduced to its last analysis, the rule is simply that a contract must be based upon a valid consideration, and that a contract in which there is no consideration moving from one party, or no obligation upon him, lacks mutuality, is unilateral, and unenforceable. * * * It is quite elementary that the promise of one party is a valid consideration for the promise of the other party."

*Texas Gas Utilities Company v. Barrett*, 460 S.W.2d 409 (Tex.1970). That Court went on to say that it is presumed that when parties make an agreement they intend it to be effectual, not nugatory; and the contract will be construed in favor of mutuality; and that the modern decisional tendency is against lending the aid of courts to defeat contracts on technical grounds of want of mutuality.

As in *Texas Gas Utilities Company*, it appears to us that the agreement in question here is a binding and enforceable contract embodying "an exchange of obligations of value to each contracting party, reciprocally or mutually induced." *Texas Gas Utilities Company*, 460 S.W.2d at 413. To illustrate that exchange of values, let us further examine the contract.

Not only was Holguin Enterprises required by the company to paint its truck or trucks white, affix the identifying decals, have drivers dress in the company uniform, and be on call seven days a week for three years, but also the enterprise was to provide transfer promptly, maintain uniforms, promote the company's business, collect all money on direct shipments, extend credit of the company when authorized or incur liability therefor if not so authorized, carry and pay for a portion of cargo insurance, insure the company's radios installed in its vehicles, guard trade secrets, agree not to compete within twenty-five miles for twenty-four months after the contract terminated, pay all expenses in carrying out its obligations to the company, to generally indemnify the company, carry $300,000.00 liability insurance, and pay all taxes and penalties incurred. Also, the company's form contract not only provided that it constituted the full agreement between the company and the Holguin Enterprise but, in fact, stipulated and acknowledged that the contract was deemed to be to the "mutual advantage" of the company (Appellee). Appellant agreed, as well, not to undertake any other freight cartage services other than for Appellee during the term of the contract, absent Appellee's written consent to the contrary.

The case which seems most clearly in point and sets forth the rule is *Hamilton v. Herrin Transportation Company*, 343 S.W.2d 300 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.). Hamilton agreed to pick up and deliver freight in Waco. The court stated, "[w]here one person obligates himself to perform services for another as here, an obligation on the part of the other party to supply the subject matter of the contract will be implied." *Id.* at 303.

To conclude, we respond to our initial question. We have determined that the contract before us implies an obligation on Appellee's part to provide the subject matter. There is ample valid consideration as contemplated by *Texas Gas Utilities Company;* there is clearly an obligation on Appellee's part under *Chicago, R.I. & G. Ry. Co.* not to bargain to another the right it had already bargained to Appellant. And, the *Chicago* standard should offer some guidance to the trial court in arriving at a proper charge on damages. We can identify with the trial court's concern in that regard.

Accordingly, Appellant's sole point is sustained and we will reverse and remand.

In view of our reversal and remand, we sustain Appellee's cross-point and reverse

the entire judgment including so much thereof as denies Appellee's counterclaim and third-party petition and remand the entire case for trial on the merits.