In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00080-CV
______________________________


MARION THOMAS WEST, INDIVIDUALLY
AND D/B/A ROYLE CONTAINER COMPANY, Appellant
 
V.
 
BRENNTAG SOUTHWEST, INC.,
SUCCESSOR IN INTEREST TO DELTA SOLVENTS AND
CHEMICAL COMPANY, FORMERLY D/B/A
DELTA CONTAINER, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 2002-90-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            This is an appeal from a judgment in favor of a current landowner, Marion Thomas West,
Individually and d/b/a Royle Container Company (West), awarding him $1,024,986.30 in damages
and $500,000.00 in exemplary damages against a former operator on the land, Brenntag Southwest,
Inc., Successor in Interest to Delta Solvents and Chemical Company, formerly d/b/a Delta Container
(Delta/Brenntag), who engaged in drum reconditioning and waste disposal that caused significant
contamination of the property. West appeals the trial court's failure to award attorney's fees. 
Brenntag brings several points of error, raising issues of standing, nature of the injury to the land,
breach of contract, and measure of damages. We sustain two of Brenntag's cross-points of error,
concluding that West lacked standing to bring a cause of action in negligence or nuisance for injury
to his land and that the jury's findings regarding breach of an agreed order lacks support in the
record. Based on those conclusions, we will overrule West's point of error concerning attorney's
fees. Accordingly, we will reverse the trial court's judgment and render judgment that West take
nothing by his suit.
I.         FACTUAL AND PROCEDURAL HISTORY
A.        Delta's Business
            Delta Solvents & Chemical Company, predecessor-in-interest to Brenntag, leased the land
at 200 Valentine Avenue in Longview from the Walker Trusts. Delta entered into a contract to
dispose of solvents and paint and also carried on a drum recycling business at the property.


 The
record demonstrates that these operations involved the dumping of paint and solvents into earthen
pits and into a buried milk truck. The record shows that Delta washed out the fifty-five gallon drums
onto the ground and buried other fifty-five gallon drums containing hazardous waste. Not
surprisingly, the record shows that, in 1980, Delta suspected the soil was polluted and ceased its
business. 
B.        Sale of Business to Sikes
            In 1980, Delta sold its business to Philip Sikes. Sikes leased the property from the Walker
Trusts until 1982, when he undertook to purchase the land. Before the purchase, Sikes required
removal of two buried tanks, one being the buried milk truck tank. He also had Delta remove some
of the contaminated soil which, Sikes testified, Delta simply moved to another one of its properties
down the road. While he owned the property, Sikes "heard" that drums had been buried on the
property, but never located any. Sikes also operated a drum reconditioning business, but recycled
the wastewater generated from the cleaning of the drums. 
C.        West Purchases Property from Sikes
            In 1984, West purchased the property from Sikes. West continued the drum reconditioning
until 1988. In 1988, West began preparations to build a loading dock on the property, preparations
which included bulldozing down a tree. The bulldozer struck a buried drum that began spewing
liquid, which then ignited. West discovered that this area has been used as a drum disposal. West
contacted Sikes and Delta. The following day, a former Delta employee told West that he thought
Delta had buried the drums there. West notified the Texas Water Commission (TWC),


 and it
immediately began to investigate the site. Twenty drums were ultimately unearthed. 
D.        TWC's Investigation and Agreed Order of Remediation
            In June 1991, the TWC issued its preliminary report. The report detailed the history of
ownership of and operations on the property, described the contamination present as "hazardous,"
and attributed the contamination to the period of Delta's operations. 
            In November 1991, West and Delta entered into an Agreed Order for Remediation with the
TWC. The Agreed Order named West, his company (Royle Container), and Delta as respondents
and deemed them "responsible" and "liable" parties within the Solid Waste Disposal Act. See Tex.
Health & Safety Code Ann. § 361.271 (Vernon 2001). The Order found that Delta buried the
drums and discharged rinsewater and spent solvents into earthen pits. The Order then outlined
several steps to be taken by the respondents from planning to reporting to implementation. 
E.        What Has and Has Not Been Done
            Delta/Brenntag hired ARCADIS, an independent environmental consulting firm, which
drilled monitoring wells, took soil samples, and tested the soil. ARCADIS has not completed the
remediation of the property. According to Brenntag's expert, Michael Gates, Brenntag has spent
$200,000.00 to $300,000.00 for ARCADIS' services in advancement of the Agreed Order. In June
2003, Brenntag submitted its remediation action plan, which has not yet been approved. Gates
testified that the cost to pump and treat the site with a sugar water treatment in accordance with the
remediation plan would cost approximately $750,000.00 to $1,000,000.00. 
F.        West Files Suit
            Over a decade after the parties entered into the Agreed Order, West filed suit.


 After the
evidence was closed and the parties rested, the trial court allowed West to amend his petition to
include a claim for breach of contract. The parties stipulated that the prevailing party's attorney's
fees would be $59,000.00. 
G.       Jury Charge and Verdict
            The trial court submitted the case to the jury on theories of negligence, nuisance, and breach
of contract.


 Specifically, the jury was asked whether Brenntag failed to comply with the Agreed
Order and what damages such failure caused to West. Delta did not object to the submission of the
case in this manner. The jury found that Brenntag did fail to comply with the Agreed Order and that
its failure caused West $900,000.00 in damages. The jury found in favor of West on all other issues
as well. The jury then returned a verdict favoring West on the issue of exemplary damages. 
I.         Trial Court's Judgment
            The court entered judgment in favor of West, awarding actual damages in the amount of
$1,024,986.30, plus post-judgment interest, and $500,000.00 in exemplary damages. The judgment
recites all the jury's findings, but does not specify on which it was based. The trial court did not
award attorney's fees to West.
J.         Appellate History
            Despite the sizeable award, West filed his notice of appeal July 12, 2004, indicating that his
appeal would be taken to this Court. Brenntag filed its notice of appeal August 11, 2004, in the Tyler
Court of Appeals.


 Brenntag moved to dismiss the appeal filed in this Court and transfer the case
to the Tyler court. Brenntag argued that West simply wanted to take the position of appellant and
interfere with Brenntag's appeal and that West's appeal was frivolous and should be dismissed.



            The matter was forwarded to the Texas Supreme Court. The Texas Supreme Court denied
Brenntag's motion to dismiss and its motion to transfer. Therefore, this Court has jurisdiction to
determine the appeal and cross-appeal of the trial court's judgment.
K.       West's Appeal and Brenntag's Cross-Appeal
            West appeals the trial court's refusal to award attorney's fees. West contends the trial court
was required to do so since the parties stipulated that the prevailing party's attorney's fees would be
$59,000.00. Brenntag also appeals the trial court's judgment, bringing five points of error. For the
purpose of clarity and in a manner consistent with the parties' positions at argument, we first address
Brenntag's cross-points of error.
II.       STANDING
            Brenntag points out that West bought the Valentine Avenue property in 1984, years after
Delta had deposited the contaminants. Since this injury occurred before West's ownership, and since
West did not get an assignment of claims from the previous landowner, Brenntag argues West lacks
standing to sue Brenntag for those injuries occurring in 1976–1980, while Delta operated its business
on the property. Concluding the pleadings and evidence fail to show a new injury during West's
ownership, we agree and dismiss West's negligence and nuisance claims for want of jurisdiction.
A.        Standing of Landowner to Sue for Injury to Land
            In order for a landowner to have standing to sue for injury to land, one of two circumstances
must exist. One, in the case where the injury occurred to the land before the current landowner's
purchase of the land, the vendor must have assigned such claims to the landowner. Two, the injury
to the land must have occurred during the plaintiff-landowner's ownership of the property.
            No one contends that Sikes, the intervening landowner, assigned such claims to West.


 See
Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, 563 (1936). That being the case, the
issue, not a new one to this Court, is whether there was an injury to the land while West owned the
property.
            Recently, we have held that "a landowner lacks standing to sue for injury to real property
when any injury occurred before the landowner acquired the property, his or her deed contains no
assignment of any cause of action, and there is no evidence of a new injury since the current
landowner has owned the property." See Cook, 145 S.W.3d at 780. In Cook, when Exxon ceased
its operations on the land and abandoned its equipment, the damage was complete. Id. at 785. 
Affirming the trial court's summary judgment, we concluded Cook failed to present any evidence that
he sustained a new injury since he acquired the property. Id. at 786. Thus, he lacked standing to sue
for injury to the land.


 Id.
            We also addressed the issue of standing in a similar situation in Denman v. Citgo Pipeline
Co., 123 S.W.3d 728 (Tex. App.—Texarkana 2003, no pet.). The Denmans discovered soil
contamination, buried concrete structures, and asbestos-covered pipelines soon after they purchased
the property. Denman, 123 S.W.3d at 731. They sued Citgo, which had conducted operations on
the land for twenty-two years before ceasing operations a year and a half before the Denmans
purchased the land. Id. at 730. The Denmans were subsequent purchasers and had no assignment
of the claim from the previous landowner. Id. at 731–34. We affirmed summary judgment in favor
of Citgo because the Denmans lacked standing to sue, having shown no injury to land during their
ownership. Id.
            In Exxon Corp. v. Pluff, 94 S.W.3d 22 (Tex. App.—Tyler 2002, pet. denied), a landowner
sued Exxon based on the oil company's failure to remove all of the oilfield materials used in drilling
and operation of oil wells on his property. Pluff testified that his claim against Exxon was based on
its failure to remove all of the oilfield materials that were used in the drilling and operation of the
oil wells on the property and that all of those materials were on the property before he bought it. Id.
at 26. He also testified that Exxon had not conducted any operations on the property since he
purchased it and that no oil spills occurred after the date he purchased the property. Id. The Tyler
Court of Appeals concluded Pluff had no cause of action, and therefore lacked standing, because he
showed no injury occurred during his ownership of the land. Id. at 28. The court concluded the
undisputed evidence "showed a continuing condition that already existed on the date of purchase,"
and "[w]ithout a new injury that occurred after [Pluff] purchased the property or an assignment of
a cause of action for the prior injury, [Pluff] had not been aggrieved and therefore had no standing." 
Id.
B.        Review of Standing
            Standing is a necessary component of subject-matter jurisdiction. Tex. Ass'n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 445–46 (Tex. 1993). Whether a trial court has subject-matter
jurisdiction is a question of law subject to de novo review. Pluff, 94 S.W.3d at 26.
            The proper initial inquiry is whether West had a "cause of action, which involves the
combination of a right on the part of the plaintiff and a violation of such right by defendant." See
id. The general test for standing in Texas requires that there be a real controversy between the
parties that will be actually determined by the judicial declaration sought. Tex. Ass'n of Bus., 852
S.W.2d at 446. It is important to keep in mind that standing deals with whether a litigant is the
proper person to bring a lawsuit, not whether that party can ultimately prevail on the claims asserted. 
See Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984) (holding "the question of standing is distinct
from the question of proof and once the plaintiffs alleged an interest peculiar to themselves and
distinguishable from the public generally, they were entitled to a factual hearing"); Faulkner v. Bost,
137 S.W.3d 254, 259 (Tex. App.—Tyler 2004, no pet.).
            Standing is generally a question of law determined by the court from the pleadings. See Tex.
Nat. Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Tex. Ass'n of Business,
852 S.W.2d at 446. To have standing, the pleader must allege facts that affirmatively demonstrate
the court's jurisdiction to hear the cause. Tex. Ass'n of Bus., 852 S.W.2d at 446; Bailey v. City of
Austin, 972 S.W.2d 180, 184–85 (Tex. App.—Austin 1998, pet. denied). The Texas Supreme Court
has stated, however, that plaintiffs need not preview their case on the merits simply to establish
jurisdiction. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554–55 (Tex. 2000).
            A review of standing is not limited to the pleadings when a plaintiff is required to prove facts
that are "primarily jurisdictional," as when a plaintiff organization attempts to establish associational
standing. Id. An appellate court should construe the petition in favor of the party, and if necessary,
review the entire record to determine if any evidence supports standing. Tex. Ass'n of Bus., 852
S.W.2d at 446; Bailey, 972 S.W.2d at 184–85. Here, as described, in order to establish his standing
as a subsequent landowner, West was required to show a new, distinct injury that occurred after he
acquired the property. So, the issue of West's standing as a subsequent landowner is analogous to
the determination of associational standing insofar as the determination of standing does require the
plaintiff to prove facts that are "primarily jurisdictional." With that, we conclude this case is one in
which it is necessary to review the entire record to determine if any evidence supports standing. See
Tex. Ass'n of Bus., 852 S.W.2d at 446.
C.        No New Injury, No Standing
            First, we look to West's pleadings, construing them in a light most favorable to him. See id.
at 445. In his first amended petition, West alleges the following:
This suit [arose] when the plaintiff WEST bought a tract of land that had
previously belonged to Brenntag's predecessor in interest, DELTA SOLVENTS AND
CHEMICAL COMPANY or one of its affiliates. DELTA had conducted operations
on the premises prior to West's acquisition of the property.

So, the petition makes clear that the injury to the land involved Delta's prior operations. Since the
petition clearly puts West in the position of a subsequent landowner, these allegations, the
inaccuracies in ownership aside, raise the need for West to further allege that Delta's prior operations
somehow had injured the land during West's ownership. However, the petition does not do so. 
Rather, the petition only confirms that need by alleging that, unknown to West at the time of his
purchase of the land, "DELTA had violated numerous environmental laws during their time on the
property." West does not allege any dates of a new injury or a more general allegation that the land
was injured during his ownership. That is, he does not allege any of the "primarily jurisdictional"
facts necessary to establish standing. See Blue, 34 S.W.3d at 554–55. He alleges that he would not
have bought the property had he known of the contamination and that, as a result of the
contamination, West cannot sell the property without taking a "big loss on it." While these
allegations do have some bearing on the issue of damages, they do not provide the specific facts
necessary to confer standing on West when the petition plainly states that West is a subsequent
owner of the land on which Delta operated.
            We recognize that, since the issue of standing was not raised until Brenntag's motion for
judgment notwithstanding the verdict, West did not have an opportunity to cure the inadequacies in
his pleadings. We bear that in mind as we move on to a review of the record to determine whether
it reveals facts sufficient to confer standing. 
            West argues that the gradual leaking of contamination into the soil continued to occur while
he owned the property and that, therefore, he has sustained a new injury and has standing to sue. He
argues that he has sustained a new injury since "the hazardous waste had not been fully removed, the
ground water had been contaminated, the water had migrated offsite, and the site had not been fully
secured." 
            The record establishes that the injury to the Valentine Avenue property occurred during the
years 1976–1980, while Delta irresponsibly dumped solvents into the earth and buried several drums
of solvents into the earth. The fact, on which West relies, that the injury has remained throughout
West's ownership does not create a new injury to the land. Rather, the injury is a continuous,
lingering injury


 and one for which West, a subsequent landowner without an assignment of claims,
has no standing to sue. The trial court was without subject-matter jurisdiction over these claims. 
We sustain Brenntag's complaint, and dismiss for want of jurisdiction West's claims for injury to
land. See Douglas v. Delp, 987 S.W.2d 879, 882 (Tex. 1999).
III.      BREACH OF CONTRACT
            Our disposition of West's claims of negligence and nuisance concerning the injuries to land
does not dispose of the issues concerning the jury's findings on West's contract claim. After the close
of evidence, the trial court allowed West to amend his petition to allege a cause of action for breach
of contract. Brenntag did not object to this amendment and, in fact, submitted its own question on
West's performance under the Agreed Order. The contract claim is, thus, properly before us. We
will address the merits of Brenntag's cross-point of error regarding the trial court's denial of
Brenntag's motion for judgment notwithstanding the jury's verdict on the breach of contract issues.
            The jury found that Brenntag, but not West, "fail[ed] to comply with the November 1991
Agreed Order" and that Brenntag's failure resulted in damages to West in the amount of
$900,000.00.


 Brenntag contends the trial court should have disregarded the jury's answers on
West's breach of contract claim because the evidence established, as a matter of law, that there was
no cause of action for a breach of contract. 
A.        Standard of Review
            A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding
the verdict when there is no evidence on which the jury could have made its findings. See Mancorp,
Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990); Harbin v. Seale, 461 S.W.2d 591, 592 (Tex.
1970). No evidence exists, and the trial court should render a judgment notwithstanding the verdict,
when the record discloses one of the following: (a) there is a complete absence of evidence of a vital
fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. See Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In making this determination, we must
review the record in the light most favorable to the verdict, considering only the evidence and
inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict. 
Mancorp, 802 S.W.2d at 227. 
B.        Breach of Contract
            The elements of a breach of contract are that (1) the plaintiff and defendant had a valid,
enforceable contract; (2) the plaintiff performed or tendered performance of the contractual
obligations; (3) the defendant breached the contract; and (4) the defendant's breach caused the
plaintiff's injuries. Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st
Dist.] 1997, no pet.). Applying the no-evidence standards to the elements of breach of contract, we
conclude that the trial court should have disregarded the jury's finding that Brenntag's failure to
comply with the Agreed Order damaged West in the amount of $900,000.00.
            The parties agree that the Agreed Order did impose contractual obligations to the State; the
remaining issue appears to center on the existence of obligations to one another. More specifically,
we must determine whether the Agreed Order creates a valid, enforceable contract between West and
Brenntag as co-respondents.


 In order to have a valid, enforceable contract satisfying the first
element of a cause of action for breach, there must be mutual obligations between West and
Brenntag:
A contract must be based on valid consideration, i.e., mutuality of obligation. 
Consideration consists of benefits and detriments to the contracting parties. The
detriments must induce the parties to make the promises, and the promises must
induce the parties to incur the detriments. A contract that lacks consideration lacks
mutuality of obligation and is unenforceable.

In re Turner Bros. Trucking Co., 8 S.W.3d 370, 373 (Tex. App.—Texarkana 1999, orig. proceeding)
(citing Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408–09 (Tex. 1997)). Put another way, a valid
contract must contain "an exchange of obligations of value to each contracting party, reciprocally
or mutually induced." See Holguin v. Twin Cities Servs., Inc., 750 S.W.2d 817, 819 (Tex. App.—El
Paso 1988, no writ).
C.        No Contract Between West and Brenntag
            Although there are arguable points regarding each element of a breach of contract, we need
only address the first element. Even reading the Agreed Order in a light most favorable to the
verdict, we do not find support for the position that it created a valid, enforceable contract between
West and Brenntag. In fact, it establishes the opposite. Again, the Order names as "responsible" and
"liable" respondents West, Royle Container, and Delta. It goes on to outline the duties which the
respondents, as a group, must fulfill. These duties are imposed by and owed to the State. Nowhere
does the Order specify what Brenntag must do to fulfill obligations to West.


 The Agreed Order
does not reveal mutual obligations between West and Brenntag. Rather, the consideration supporting
the Agreed Order flows only between the State and the respondents. Nor does the remaining record
support the jury's findings as to the contractual damages. Testimony regarding a lack of
communication and cooperation between West and Brenntag over the course of several years serves
to confirm that the Agreed Order did not create a valid, enforceable contract between West and
Brenntag.
            The record, even when viewed in a light most favorable to the jury's findings, does not
support the finding that Brenntag's failure to comply with the Agreed Order caused $900,000.00 in
damages to West. The record establishes, as a matter of law, that West could not recover on a breach
of contract claim. The trial court should have granted Brenntag's motion for judgment
notwithstanding the verdict as to the jury's findings regarding the damages sustained due to
Brenntag's alleged breach of the Agreed Order. We sustain Brenntag's third point of error.
IV.      ATTORNEY'S FEES: WEST'S SOLE POINT OF ERROR
            West argues that the trial court erred by not awarding him attorney's fees in light of the jury's
finding on his breach of contract claim and the parties' stipulation as to the amount of reasonable
attorney's fees for the prevailing party. He prays that this Court modify the trial court's judgment to
award him $59,000.00 in attorney's fees. See Tex. R. App. P. 43.2. Brenntag argues that West never
brought this issue to the trial court's attention and that, in fact, the judgment entered closely
resembles the judgment proposed by West himself, including the omission of attorney's fees. 
Additionally, Brenntag points to West's motion for entry of judgment that did not award attorney's
fees. We agree with Brenntag's position and find no error in the omission of attorney's fees. 
A.        Awarding Attorney's Fees Under Section 38.001
            The award of reasonable attorney's fees to a plaintiff recovering on a valid claim of breach
of contract is mandatory under Texas law. In re Smith, 966 F.2d 973, 978 (5th Cir. 1992). Once a
jury finds that a party should prevail on a claim on which attorney's fees are mandated, the only
question remaining is the reasonable value of the attorney's fees, not whether they should be
awarded. Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 23 (Tex. App.—Tyler 2000, pet.
denied).
            West sought recovery of his attorney's fees pursuant to the Texas Civil Practice and Remedies
Code which provides, in pertinent part, that "[a] person may recover reasonable attorney's fees . . .
in addition to the amount of a valid claim and cost, if the claim is for: . . . an oral or written
contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997).
B.        No Error Since No Recovery on Breach of Contract Claim
            West seeks attorney's fees solely on the basis of the jury's findings regarding breach of
contract. We have concluded the trial court should have disregarded the jury's finding as to breach
of the Agreed Order, since there was no evidence to support such a claim. So, it obviously follows
that West was not entitled to attorney's fees based on the jury's findings regarding breach of contract.
V.        CONCLUSION
            We sustain Brenntag's first cross-point of error regarding standing, concluding West lacked
standing to sue for negligence or nuisance, since he failed to show a new injury to his land during
his ownership. We also sustain Brenntag's point challenging the jury's finding as to breach of the
Agreed Order. The Order does not create a valid, enforceable contract between co-respondents West
and Brenntag. Our disposition of Brenntag's first and third contentions makes it unnecessary to
address its remaining issues on appeal. 
            We overrule West's complaint regarding the trial court's failure to award attorney's fees, since
we have concluded there was no evidence to support the only cause of action on which he sought
attorney's fees. Having found that West lacked standing to sue for negligence or nuisance, the
judgment as to those claims is reversed and judgment is rendered that those claims be dismissed for
want of jurisdiction. The judgment as to the remaining claims is reversed and judgment is rendered
that West take nothing.


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          June 16, 2005
Date Decided:             July 20, 2005