**Clyde NEELY, et ux., Petitioners,**

v.

**COMMUNITY PROPERTIES, INC., et al., Respondents.**

**No. C–221.**

Supreme Court of Texas.

July 21, 1982.

Dale E. Muller, Austin, for petitioners.

Brown, Rose, Maroney, Baker and Barber, Scott R. Kidd, Austin, Winstead, McGuire, Sechrest & Trimble, W. Ted Minick and Patrick F. McManemin, Dallas, for respondents.

GREENHILL, Chief Justice.

In this action, Clyde and Annie May Neely recovered $62,000.00 for flood damage to their land. The flooding began after Community Properties, Inc. (CPI) and Mesa Village Apartments, Co. (MVA) constructed an apartment complex adjacent to the Neelys' land.

The jury found that this construction, and the subsequent flooding, permanently damaged the Neelys' land. The jury also found exemplary damages because CPI and MVA had displayed "gross indifference . . . or reckless disregard" to the rights of the Neelys.

The Court of Appeals held that no evidence supported the submission of, or answers to, issues on permanent and exemplary damages. 611 S.W.2d 947. It reversed the judgment of the trial court and remanded the cause. The court held that, on retrial, the trial court should not submit an issue on permanent damage if the evidence is "substantially the same as that presented in this record." 611 S.W.2d at 951.

The Court of Appeals ruled that the Neelys take nothing on their claim for exemplary damages.[1] We reverse the Court of Appeals judgment and remand to that court for disposition of factual sufficiency points. *Siebenlist v. Harville,* 596 S.W.2d 113 (Tex. 1980).

The Neelys have lived on the land in question since 1945, the year they married. They live in the house which was on the land when they moved there.

CPI and MVA do not, on appeal, deny that their apartment complex causes the flooding at issue. The Neelys testified that they had no flooding problems before CPI and MVA built the complex. Evidence at trial suggested that the complex and its drainage system collect rain water and discharge it in concentrated, rushing streams across the Neelys' front yard.

On one occasion, after a moderate rainstorm, two inches of water stood on the Neelys' front porch. Testimony at trial suggested the flooding had disturbed Mrs. Neely so much that she could not bear to live in her house.

At the time of trial, the Neelys had tried to sell their house and land. Testimony suggested that, because of the flooding, no one had offered to buy the property.

Shortly after the flooding began, counsel for the Neelys demanded that CPI and MVA take necessary steps to stop the flooding. In response, CPI and MVA built retention ponds to collect the run-off before it reached the Neelys' property. CPI and MVA used simple dirt mounds, or "berms," to build the ponds.

Subsequent rainfall eroded the berms. More than one year before trial, counsel for the Neelys demanded that CPI and MVA put grass sod on the berms. CPI's president said the company would sod the berms immediately. At the time of trial, CPI had not sodded the berms.

Sometime after they learned about the flooding, CPI and MVA submitted to the City of Austin plans for a system to eliminate the flooding. The city approved these plans. At the time of trial, however, CPI and MVA had not complied with the plans. At trial, MVA's civil engineer testified that the flooding would have decreased by one-third if CPI and MVA had complied with the plans.

The evidence at trial suggested that CPI and MVA knew their berm system would not stop the flooding. MVA's engineer, for example, testified that he could not assure the court that the berm system would stop the flooding. During the trial, two other engineers testified that CPI and MVA could not stop the flooding without building a system on the Neelys' land.

█ The above evidence supports the jury's finding that the flooding permanently damaged the Neelys' property. The evidence also supports the jury's finding that CPI and MVA displayed conscious indifference. For these reasons, the trial court correctly submitted issues on such matters.

On remand, the Court of Appeals may consider whether factually sufficient evidence supports the answers to those issues. To decide that, the court should apply the following principles of law.

In *Kraft v. Langford,* 565 S.W.2d 223 (Tex.1978), we held that property damage is temporary if (1) a court could enjoin successfully the activity or condition causing the damage; *and* (2) that activity or condition would not cause damage absent some "irregular force such as rain." CPI and

---

1. The trial court awarded the Neelys $2,000.00 for "personal discomfort, inconvenience, and annoyance." The Court of Appeals did not disturb this award because CPI and MVA did not challenge it by point of error. We further note that CPI and MVA filed no motion for rehearing in the Court of Appeals. *See Nagle v. Nagle,* 633 S.W.2d 796 (Tex.1982).

MVA seem to argue that damage is always temporary when rain is involved. We have not so held.

In *Rosenthal v. Taylor, B. & H. Ry. Co.,* 79 Tex. 325, 15 S.W. 268 (1891), for example, the defendant railroad had constructed its track next to plaintiff's property. The track's embankment kept rainwater from draining off the plaintiff's lot. The court held the damage was permanent. The court stated:

> Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evaporates. The defendant seems to have treated [this as permanent damage] since they have failed, upon application, to make a culvert for the passage of the water . . . .

15 S.W. at 269.

This last statement strongly implies the court believed it could not have enjoined successfully the condition which made the property susceptible to rain damage. In contrast, in *Kraft, supra,* the trial court issued an injunction. The court apparently believed an injunction would be successful. In *Kraft,* this court held the damage involved was temporary.

■ The above discussion demonstrates that, whether damage is permanent or temporary may depend on whether an injunction would be successful. The record here contains some evidence that an injunction would not be successful. MVA's engineer testified he could not assure the court that MVA could stop the flooding. Two other engineers testified that MVA and CPI could not stop the flooding without building a system on the Neelys' property.

An injunction could not properly include an order that CPI and MVA build something on the Neelys' property. CPI and MVA have not requested, or obtained, an easement on any of the Neelys' land. The record raises a fact question as to permanent damage.

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981), we held that some evidence of "conscious indifference" supports a jury finding of gross negligence. We delivered our opinion in *Burk Royalty* after the Court of Appeals delivered its opinion in this case. As a result, the Court of Appeals based its gross negligence holding, in part, on *Sheffield Division, Armco Steel Corporation v. Jones,* 376 S.W.2d 825 (Tex.1964), a decision we overruled in *Burk Royalty.*

Another case discussed by the parties on exemplary damage is *Atlas Chemical Industries, Inc. v. Anderson,* 524 S.W.2d 681 (Tex. 1975). That was a suit for damages for the pollution of creeks. *Atlas Chemical* cites the *Sheffield Division* case, cited just above, as a basis for its holding. The opinion of the court in *Burk Royalty* cites *Atlas Chemical* for the proposition that this court no longer adhered to the "some care" test of the *Sheffield Division* case.

*Burk Royalty* is now the law; and under its "traditional no evidence" test, there is evidence of conscious indifference on the part of CPI and MVA. CPI had not, at the time of trial, fulfilled its president's promise that the company would sod the berms. MVA's engineer admitted that the company had not followed city-approved plans which would have decreased the flooding. Most importantly, perhaps, expert testimony suggested that CPI and MVA knew their berm system would not stop the flooding even if they had sodded the berms and had complied with the approved plans.

The Court of Appeals judgment is reversed and the cause remanded to that court for disposition of factual sufficiency points.