The **CITY OF ODESSA,**
Texas, Appellant,

v.

**Lee BELL and Debbie Bell, Appellees.**

**No. 08–89–00224–CV.**

Court of Appeals of Texas,
El Paso.

March 21, 1990.

Rehearing Denied as Moot in View of
Withdrawal of Petitions
April 18, 1990.

Stuart Whitlow, Shannon H. Ratliff,
McGinnis, Lochridge & Kilgore, Austin, for
appellant.

Paul M. Bohannon, Midland, for appel-
lees.

Before FULLER, WOODARD and
KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In an inverse condemnation case brought
under Article 1, sec. 17 of the Texas Consti-
tution, the jury awarded actual ($103,-

000.00) and exemplary ($327,000.00) damages in favor of the Appellee property owners against the Appellant City of Odessa ("City"), such damages allegedly resulting from the flow of sewer water discharged by water treatment facilities operated by the City, down a draw to Appellees' property. From an adverse judgment on the verdict, the City brings this appeal. We affirm in part and reverse and render in part.

The City operates two water treatment plants, one since 1950 and the second since 1982, which discharge "treated" sewer water or effluent into the Monahans Draw, a natural drainage gully located in Ector and Midland Counties. Commencing in November 1980, effluent apparently combined with rainwater began reaching and flooding Appellees' property, located some fifteen and twenty miles downstream from the two treatment plants. In their fifth amended petition, Appellees alleged that from that time through December 1988, various portions of their acreage was flooded a total of nineteen times for periods varying from a few days to as much as 310 days, with the direct and proximate result that they were frequently unable to plant or harvest crops. The case was submitted to the jury on the theory, and the jury found, that the City by its acts in discharging excessive amounts of effluent, amounting to a nuisance or a trespass, had damaged Appellees' property for public use without adequate compensation. The jury also found that the damage to the land in question was "temporary," that Appellees first became aware of damage to their land in March 1981, and that the City's conduct was done with a malicious or evil intent and was directly imputed to its government.

In its first two points of error, the City contends that, as a matter of law, punitive damages cannot be awarded in an inverse condemnation action against a municipality acting in its governmental capacity, and furthermore, there was either no evidence or insufficient evidence to support the jury's verdict awarding punitive damages.

It is settled law that the operation and maintenance of a sanitary sewer system by a city is a governmental function. *Calla-*

*way v. City of Odessa,* 602 S.W.2d 330, 333 (Tex.Civ.App.—El Paso 1980, no writ). Prior to 1969, a city was not liable for its negligent acts in the performance of a governmental function. As a result of the enactment in that year of the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code, sec. 101.001 et seq. (Vernon 1986), the immunity from liability for negligent performance of its governmental functions was removed, but it remained exempt from exemplary damages. Section 101.024. Liability for negligent acts or omissions in the performance of proprietary functions was not affected by the Tort Claims Act since it was expressly provided that the Act did "not apply to a proprietary function of a municipality." Tex.Civ.Prac. & Rem.Code, sec. 101.058 [formerly Tex.Rev.Civ.Stat.Ann. art. 6252–19, sec. 18(a)].

■ In May 1987, the Supreme Court of Texas in *City of Gladewater v. Pike,* 727 S.W.2d 514 (Tex.1987), held that even in the performance of proprietary functions, unless the acts of a city are found by the fact finder to be intentional, willful, wanton or grossly negligent so as to "show maliciousness or evil intent by a policy-making official of the municipality, no exemplary damages can be awarded." 727 S.W.2d at 525. Shortly after that opinion was released, the Texas Legislature repealed Section 101.058, effective September 2, 1987. Texas Session Laws, Acts 1987, 70th Leg., 1st C.S., ch. 2, sec. 3.13. At the same time, the legislature added Section 101.0215(a), which designated a number of listed functions of a municipality as governmental, including not only such long held governmental functions as police and fire protection, and sanitary and storm sewers, but such traditional proprietary functions as the operations of cemeteries, waterworks and street construction and design. A very few functions were designated under Section 101.0215(b) as proprietary. We take this to mean that the Tort Claims Act now applies to all actions sounding in tort brought against a municipality. Under the present statutory and case law, we conclude that in negligence actions brought under the Tort Claims Act, a city is not liable for exemplary damages, regardless

of whether the function was governmental or proprietary, by virtue of Section 101.024.

Appellees argue that *Pike* stands for the proposition that exemplary damages can be recovered from a municipality where the claim is not brought under the Tort Claims Act. We find no such broad principle expressed. It merely held that in a case of negligent performance of a proprietary function, which at that time was not covered by the Tort Claims Act, exemplary damages could be awarded under certain very egregious circumstances. As suggested above, with the repeal of Section 101.058, it is doubtful that the holding in *Pike* as it might apply to the possibility of exemplary damages in negligence cases is still valid.

■ As Appellees point out, this case is not a negligence action brought under the Tort Claims Act, but is rather a suit for damages under Article 1, sec. 17 of the Texas Constitution, resulting from a nuisance or trespass perpetrated by the City. Article 1, sec. 17 reads in applicable part as follows:

> No person's property shall be taken, damaged or destroyed for or applied to public use without *adequate compensation* being made, unless by consent of such person; .... [Emphasis added.]

The term "adequate compensation" does not encompass exemplary damages since such damages are punitive in nature and have nothing to do with compensating a party for his losses. There is no statutory authority for exemplary damages in cases brought for damage to property under Article 1, sec. 17. Appellees have cited no Texas cases, and we have found none, in which exemplary damages have been allowed to stand against a city in a situation where private property was damaged or taken for public use. In *Holt v. City of San Marcos*, 288 S.W.2d 802, 809 (Tex.Civ. App.—Austin 1956, writ ref'd n.r.e.), the court held that Article 1, sec. 17 defined the right and fixed the *exclusive* remedy of adequate compensation. Appellees did cite two cases, *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266 (Tex. Civ.App.—San Antonio 1975, writ ref'd n.r.e.) and *Ostrom v. City of San Antonio*,

77 S.W. 829 (Tex.Civ.App.—San Antonio 1903, writ ref'd), which held out the possibility of exemplary damages in an exceptional case and one in which the governing body concurs in or ratifies the acts of the municipal officers. This is not an exceptional case and there was no evidence to support the jury findings of malicious conduct or evil intent by the City or that such conduct was imputed to the City government. Such findings would require evidence that the mayor or city council, through its water treatment officials, intended not just to release large amounts of effluent into the Monahans Draw but maliciously or evilly intended to damage Appellees' land. The fact that Robert Derrington, the director of the Odessa Utilities Administration, the department responsible for the operation of the water treatment plants, testified that he thought it was all right for effluent in a heavy rain to get out of the draw and onto private land, despite the fact that the permits from the Texas Water Commission and the Environmental Protection Agency denied the City the right to use private property without first obtaining an easement, showed no evil or malicious intent. Nor is such evil intent shown by the fact the City's environmental control manager, Debbie McReynolds, was unaware or unknowledgeable of the permit restrictions. Appellees contend that the City was aware that complaints regarding sewer water flooding had been made as early as 1977 through a letter addressed to the Texas Water Quality Board. When shown a copy of the letter, which was not admitted into evidence, McReynolds acknowledged only that there "evidently were complaints lodged that early." Appellees argue in effect that the evil or malicious intent of the City (Derrington and McReynolds) to damage their land by flooding it with effluent mixed with rainwater was imputed to the City, as found by the jury, since the mayor is the chief executive officer of the City and he did not testify at the trial. They further argue that since the mayor did not refute the testimony of another property owner, Louise Gay, whatever McReynolds told Gay in June 1986 about the permits giving

the City (as Appellees characterize it) "the right to dump the sewer water" was uncontroverted, despite McReynolds' testimony that she merely told Gay that it was discharging into Monahans Draw under its permits. The record reflects that Gay actually testified that McReynolds told her that they were working on the problem but they were going to continue discharging water into the draw because they could not get anything done about it in the near future. Even under *Pike*, the burden would be on Appellees to prove that the evil and malicious intent was imputed to the mayor and city council. Under *San Antonio River Authority*, it would be necessary to show that the mayor and city council concurred in or ratified the malicious and evil acts of its departmental officials. There is some evidence that the mayor knew of property owner complaints, but this is not evidence of some evil or malicious intent or the ratification of such intent.

Despite the holdings in *San Antonio River Authority* and *Ostrom*, we have difficulty in hypothesizing a scenario in which the facts would be sufficiently egregious to support an award of exemplary damages, in addition to adequate compensation, for damage to property done by a city within the concept of public use. In these kinds of cases involving the taking or damaging of private property by state or local government, we doubt that the legislature can enlarge the meaning of "adequate compensation" to include exemplary damages without a constitutional amendment. If the people of this state wish to allow for the recovery of exemplary damages in condemnation cases, then a constitutional amendment along those lines should be presented to them. We hold that as a matter of law, a property owner is not entitled to recover exemplary damages in an inverse condemnation case brought under Article 1, sec. 17 of the Texas Constitution for the taking or damaging of property for public use. Point of Error No. One is sustained. Since we have been unable to find any evidence in support of the jury's findings on exemplary damages, Point of Error No. Two is also sustained.

In its fifth point of error, the City brings a factual insufficiency challenge to the jury finding that the acts of the City proximately caused the damage to Appellees' property. As is well known, an insufficient evidence point requires the court first to examine all of the evidence, *Lofton v. Texas Brine Corporation, et al.*, 720 S.W.2d 804, 805 (Tex.1986), and after having considered and weighed such evidence, the court is to set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since the appellate court is not a fact finder, it may not pass upon the credibility of witnesses or substitute its judgment for that of the jury, even though there is conflicting evidence upon which a different conclusion could be reached. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Appellees actually assumed a heavier burden than was necessary since it was only necessary for them to prove cause-in-fact, not foreseeability, of the damage to their property in order to recover adequate compensation under Article 1, sec. 17. *City of Fort Worth v. Miller*, 336 S.W.2d 296 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.). There is no doubt that Appellees would be entitled, under the constitutional provision, Texas Constitution, art. 1, sec. 17, to adequate compensation for damages done to their property by its flooding with effluent, whether mixed with rainwater or not, if there was sufficient evidence of cause-in-fact.

We have reviewed the testimony of a number of witnesses who were familiar with the water flow of Monahans Draw and with Appellees' property, as well as the testimony of Appellees' expert, Tim Kelly. The testimony is voluminous and consistent in the description of increased flow in Monahans Draw and on Appellees' property with a liquid that had the look, smell and other characteristics of sewer water and was clearly sufficient to support the jury's finding of cause-in-fact damage to the property. Point of Error No. Five is overruled.

In the City's third and fourth points, it claims that the damage to Appellees' property was permanent, and since the Appellees had notice of the damage and its cause more than two years before they filed suit, their entire claim is barred. The statute of limitations for such action is two years from the first realization that the damage has occurred. *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681, 684 (Tex.1975); *Durden v. City of Grand Prairie*, 626 S.W.2d 345 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). Tex.Civ. Prac. & Rem.Code Ann. sec. 16.003 (Vernon 1986). If the damage is "permanent," the statute begins to run upon discovery of the first actionable injury and not at the time when the full extent of the damage is ascertainable. *Bayouth v. Lion Oil Company*, 671 S.W.2d 867, 868 (Tex.1984). If "temporary," only those injuries occurring more than two years prior to the filing of suit are barred. *Gulf Coast Sailboats, Inc. v. McGuire*, 616 S.W.2d 385, 387 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

In considering the City's factual and legal sufficiency challenges to the finding that the damage was temporary, we must first determine whether there is any evidence of probative force to support the finding, and if so, whether the court is barred by law from giving effect to that evidence. An injury may be found to be either temporary or permanent but not both in the same action, since the concepts are mutually exclusive. Whether an injury is permanent or temporary is determined by its continuum. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). Citing *Kraft*, the Supreme Court in *Bayouth v. Lion Oil Company*, 671 S.W.2d 867, 868 (Tex.1984), speaking to the character of injuries, said:

> Permanent injuries to land result from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent or recurrent. Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent upon some irregular force such as rain.

In addition to continuum, some of the older cases have suggested that if the activity causing the damage can be successfully enjoined, then the damage is temporary. "Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury." *Kraft*, 565 S.W.2d at 227. Our Supreme Court in *Neely v. Community Properties, Inc.*, 639 S.W.2d 452, 454 (Tex.1982), relying on *Kraft*, seemed to hold that if the activity could not be enjoined, the damage would be permanent. Here, the *Neely* court misread *Kraft*. *Kraft* spoke only of a "characteristic" of a temporary injury, not the converse that inability of a court to enjoin would make the injury permanent. Furthermore, the word "characteristic" means "distinguishing feature or attribute," not an absolute requirement. The American Heritage Dictionary, 2nd College Addition 1985. In accordance with *Kraft*, we hold that the ability of a court of equity to enjoin successfully an injury causing activity is only a characteristic of a temporary injury and that the unavailability of injunction does not necessarily change a temporary injury to a permanent one. Even under *Neely*, the burden would be on the party contending "permanent injury" to prove that the activity could not be enjoined, and conflicting evidence on the availability of a successful injunction would raise a fact question as to permanent injury. Here, there is ample evidence that the injury was sporadic and contingent on the amounts of rainfall and discharge from the treatment plants. On the other hand, there is little or no evidence that the City could not be required to take some corrective measures by means of a mandatory injunction. Point of Error No. Three is overruled.

Having concluded that there is sufficient evidence to support the finding of "temporary," the City's fourth point of error becomes moot since the transcript shows that Appellees in their fifth amended petition did not plead for, and the jury in its verdict did not award, any damages for injuries to the land that occurred more than two years

prior to March 8, 1983, the date the suit was filed. Therefore, the finding of the jury that Appellees first discovered the damage to their property as a result of the City's trespass or nuisance in March 1981, even if unsupported by the evidence, represents harmless error and is therefore irrelevant to the disposition of the appeal. The fourth point of error is overruled.

In its sixth and last point of error, the City contends that there is insufficient evidence that it damaged Appellees' property since once the effluent is discharged into Monahans Draw and becomes intermingled with rainwater, the entire volume of water becomes the property of the state by virtue of Section 11.021(a) of the Texas Water Code. That section provides that "[t]he water of the ordinary flow, underflow, and tides of every flowing river, natural stream, and lake, and of every bay or arm of the Gulf of Mexico, and the storm water, floodwater, and rainwater of every river, natural stream, canyon, ravine, depression, and watershed in the state is the property of the state." Tex.Water Code Ann. sec. 11.021(a) (Vernon 1988). Other than the statute itself which by its terms applies only to water from natural sources, the City cites no authority for its unique defensive theory. The permits which grant to the City the right to discharge its effluent into the draw specifically do not grant it the right to use or damage private or public property but charge it with the responsibility of acquiring whatever property rights that might be necessary in order to utilize the discharge route. A municipality is prohibited from discharging its waste and sewage except as authorized by its permit, Tex.Water Code Ann. sec. 26.121 (Vernon 1988); and under the code, the right of an individual to pursue any available common-law remedy to abate, or to recover damages for, a condition of pollution or nuisance remains unaffected. Tex.Water Code Ann. sec. 26.133. Point of Error No. Six is without merit and is accordingly overruled.

Appellees have brought five cross-points of error which we must consider. Those cross-points, designated as numbers I-A-1.5, I-B-2.5, II-A-1 and II-B-1 are pointless since they neither complain of any error nor request any relief. *Houston First American Savings v. Musick*, 650 S.W.2d 764, 770 (Tex.1983). The remaining cross-point, II-B-2, complains of the trial court's denial of a trial amendment, offered by Appellees, to reinstate damage claims for the years of 1980, 1983 and 1984, for which a pretrial partial summary judgment had been given the City based upon limitations. Appellees claim that the City waived the limitations defense by engaging in extensive cross-examination of Appellee in the trial concerning what took place during those years. Although Appellees make reference to a motion in limine prohibiting both parties from questioning on those years, we find no such motion or order in the record, nor did Appellees mention a motion in limine in their oral request for the trial amendment in question. Appellees fail to cite any authority to support their waiver theory and we find none. This cross-point is without merit and is accordingly overruled.

The judgment of the trial court is reversed and rendered as to exemplary damages of $327,000.00 and in all other respects is affirmed. Costs of the appeal are to be assessed one-half to each of the parties.