Don DENMAN and Peggy Denman, Appellants,

v.

CITGO PIPELINE COMPANY, Appellee.

No. 06–02–00130–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 12, 2003.

Decided Dec. 8, 2003.

W. Scott Golemon, Haas & Golemon, LLP, Conroe, for appellant.

Steven R. Patterson, Merriman, Patterson, Connolly & Hughes, LLP, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Don Denman and Peggy Denman, husband and wife, appeal the granting of Citgo Pipeline Company's motion for summary judgment. The Denmans sued several defendants, including Citgo, for alleged contamination and injuries to their land caused by the presence of oil and gas equipment. The trial court concluded the Denmans, as subsequent purchasers of the property, lacked standing to bring suit for injuries that occurred before their purchase of the property.

The Denmans contend there are questions of fact, precluding summary judgment, as to whether Citgo still owns a right-of-way on their property and a second pipeline on that right-of-way, and whether Citgo has ongoing operations on that right-of-way. The Denmans also assert standing to sue because the injuries to their property are temporary, not permanent. Finally, they contend Citgo's violations of Railroad Commission regulations and the Texas Litter Abatement Act also provide them with standing.

We overrule the Denmans' contentions and affirm the summary judgment.

## Background

The right-of-way in question was granted January 19, 1932, by W.L. Pentecost and Daisy Pentecost to Arkansas Pipeline Corporation for the transportation of oil or gas on lands they held in the L.B. Outlaw and Mary Scott Surveys. Arkansas Pipeline Corporation merged with City Services Pipeline Company and later became Citgo Pipeline Company. Citgo owned and operated a four-inch "Donaldson Lateral" pipeline on the right-of-way in question from 1975 until 1997. On January 27, 1997, Citgo sold this pipeline to EOTT,[1] Energy Pipeline Limited Partnership. The Denmans purchased the property on which this right-of-way exists October 15, 1998. The deed conveying the property to the Denmans expressly subjected their rights to all easements, rights-of-way, and oil and gas leases that affected the property. The deed did not contain an express assignment for causes of action for any prior injuries to the land.

---

1. There are references in the record to "EEOT" pipeline, which we assume to be typographical errors.

Around February 21, 1999, the Denmans allegedly discovered contamination of their soil. They also became aware of concrete pillars, deadmans,[2] and asbestos-covered pipelines on their land. The Denmans sued Citgo and twenty-nine other defendants, alleging causes of action based on trespass, negligence, nuisance, and unjust enrichment. Citgo moved for summary judgment, contending the Denmans, as subsequent purchasers, lacked standing to bring suit against an oil and gas operator for injuries that occurred before their purchase of the land. Citgo established, by affidavit testimony, that it had not conducted any operations on the property in question since the sale of the Donaldson Lateral pipeline to EOTT. Therefore, Citgo argued, it had caused no damage to the Denmans. The Denmans contended Citgo continued to own the right-of-way in question, as well as a second pipeline on that right-of-way. In their response to the motion for summary judgment, the Denmans produced pictures purported to be of a "pipeline above land surface on Denman property" and Citgo signs, warning of a pipeline. The trial court granted Citgo's motion. The Denmans filed a motion for reconsideration and amended their petition to include violations of the Texas Litter Abatement Act. In the motion for reconsideration, the Denmans produced several more photographs, purportedly "depicting the CITGO/EOTT Right of Way, a surface pipeline wrapped with asbestos and/or the surface pipeline in close proximity or crossing the four inch Donaldson Lateral pipeline." The trial court denied the Denmans' motion for reconsideration and granted Citgo's motion for severance.

## Standard of Review

Citgo filed a traditional motion for summary judgment. *See* Tex.R. Civ. P.

166a(c). A trial court must grant such a motion if the moving party establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991). Once the movant establishes his or her right to summary judgment, the non-movant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the nonmovant and indulges every reasonable inference and resolves any doubts in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

## Standing

Standing is a necessary component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993). Subject matter jurisdiction is essential to the authority of a court to decide a case. *Id.* Whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). Accordingly, we conduct a de novo review of a trial court's determination of standing. *See id.* The fundamental rule of standing is that the person whose primary legal right has been breached is the only person who may seek redress for an injury. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976). In other words, a person has standing to sue when he or she is personally aggrieved by an alleged wrong. *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.

---

**2.** "Deadman" in the oilfield refers to a timber or concrete block buried in the ground to which guy or stay wires are attached to se-

cure derricks. *See Grimes v. Goodman Drilling Co.,* 216 S.W. 202, 203 (Tex.Civ.App.-Fort Worth 1919, writ dism'd).

1996). Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate. *Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.). Therefore, to reverse the trial court's ruling that the Denmans had no standing, this Court must determine the Denmans had a cause of action for injury to the property. *See Nobles,* 533 S.W.2d at 927 (*citing Am. Nat'l Ins. Co. v. Hicks,* 35 S.W.2d 128 (Tex. Comm'n App.1931, judgm't adopted)).

 A cause of action accrues when a plaintiff first becomes entitled to file a lawsuit based on a legal wrong attributed to a defendant. *Zidell v. Bird,* 692 S.W.2d 550, 554 (Tex.App.-Austin 1985, no writ). In *Hicks,* 35 S.W.2d at 131, the court found that a right of action "depends on the existence of what is termed a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by defendant." Generally, a cause of action for injury to real property accrues when the injury is committed. *Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984) (cause of action for permanent injury to land accrues on discovery of first actionable injury); *see Yancy v. City of Tyler,* 836 S.W.2d 337, 341 (Tex.App.-Tyler 1992, writ denied) (cause of action for temporary injury to land accrues on each actionable injury). The right to sue for the injury is a personal right belonging to the person owning the property at the time of the injury. *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.). Therefore, without express provision, the right does not pass to a subsequent purchaser of the property. *Abbott,* 721 S.W.2d at 875; *Lay,* 599 S.W.2d at 686. A mere subsequent purchaser cannot recover for an injury committed before his or her purchase. *Lay,* 599 S.W.2d at 686.

Citgo relies on *Senn v. Texaco, Inc.,* 55 S.W.3d 222 (Tex.App.-Eastland 2001, pet. denied), and *Exxon Corp. v. Pluff,* 94 S.W.3d 22 (Tex.App.-Tyler 2002, pet. denied). Both the *Senn* and *Pluff* cases are very similar to the case at hand, and both held that the cause of action for injuries to property belongs to the owner of the property at the time of the alleged injuries and that subsequent purchasers lack standing to sue, absent an express provision in the deed granting them that power.

In *Senn,* 55 S.W.3d at 224, several oil and gas producers operated on property known as the "Covered 'S' Ranch" and allegedly caused permanent and temporary injuries to the ranch by contaminating the aquifer underlying the land. The Senns purchased the property in 1997, but all drilling and production activities of the defendant producers had ceased before the Senns' purchase. *Id.* at 224–25. The defendant producers relied on the well-established rule in Texas that:

> Where injury to land results from a thing that the law regards as a permanent nuisance, the right of action for all the damages resulting from the injury accrues to the owner of the land *at the time the thing that causes the injury commences to affect the land.*

*Senn,* 55 S.W.3d at 225 (quoting *Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561, 562 (1936)). Based on this long-standing principle, the court found the Senns lacked standing to bring suit for any type of injury to the land that occurred before their purchase. *Senn,* 55 S.W.3d at 226. The court noted that, while the rule in *Vann* may seem harsh as applied to the Senns, the Senns could have avoided its application by bargaining for an assignment of the prior owner's possi-

ble causes of action for injuries to the land that occurred before the purchase, or insisted that the grantor sellers give them warranties about the condition of the land in the deed. *Id.* In addition, the Senns could have performed a better inspection of the land, where it was apparent from the lack of warranties about the condition of the land and the long-standing production of oil and gas from the land, that such an inspection was needed. *Id.*

In *Pluff,* 94 S.W.3d at 26, a landowner sued Exxon based on the oil company's failure to remove all of the oilfield materials used in drilling and operation of oil wells on his property. Exxon's drilling and production activities on the property ceased before Pluff's purchase of the land in 1992, and all of the oilfield materials were on the property on the date of Pluff's purchase. *Id.* at 27. The Tyler Court of Appeals found that standing is a threshold issue, and the proper inquiry is whether the plaintiff has a "cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by defendant." *Id.* at 28 (quoting *Nobles,* 533 S.W.2d at 927). The court found the subsequent landowner had no cause of action, and therefore lacked standing, because they showed no injury that occurred during their ownership of the land. *Pluff,* 94 S.W.3d at 28. In summarizing the *Senn* holding, the *Pluff* court found that, "in determining standing, the *characterization* of the injury [is] not important; it [is] the *fact* of injury that [is] critical." *Id.* The court concluded the undisputed evidence "showed a continuing condition that already existed on the date of purchase," and "[w]ithout a new injury that occurred after they purchased the property or an assignment of a cause of action for the prior injury, the [plaintiff] had not been aggrieved and therefore had no standing." *Id.*

In this case, it is uncontroverted that Citgo sold the Donaldson Lateral pipeline to EOTT before the Denmans purchased the property and that, since the sale, Citgo has not conducted any operations on the Denman property. Citgo provided the affidavit testimony of Clyde Stone, a Citgo Petroleum Corporation employee, who stated that, on January 27, 1997, Citgo sold the Donaldson Lateral pipeline to EOTT Energy Pipeline and that, since the date of that sale, "Citgo Pipeline Company has not conducted any other operations on the property...." Rule 166a(c) of the Rules of Civil Procedure states that a summary judgment may be based on "uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX.R. CIV. P. 166a(c).

### Ongoing Operations

The Denmans did not controvert that Citgo sold the Donaldson Lateral pipeline to EOTT before their purchase of the land, but instead contend Citgo owned a second pipeline on the right-of-way in question and therefore have ongoing operations on the property. Rule 166a(c) of the Rules of Civil Procedure provides that "[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX.R. CIV. P. 166a(c). As the rule makes clear, the court has discretion to accept late-filed evidence. *Beavers v. Goose Creek Consol. Ind. Sch. Dist.,* 884 S.W.2d 932, 935 (Tex.App.-Waco 1994, writ denied). In the Denmans' timely response to the motion for summary judgment, they produced pictures purported by affidavit to be a "pipeline above land surface on Denman property" and Citgo signs warning of a pipeline. The trial court granted Citgo's motion for summary judgment March 22,

2002. The Denmans filed a motion for reconsideration of the order granting Citgo's motion for summary judgment June 21, 2002, and included several more photographs purported by affidavit to be "depicting the CITGO/EOTT Right of Way, a surface pipeline wrapped with asbestos and/or the surface pipeline in close proximity or crossing the four inch Donaldson Lateral pipeline." There is no indication in the record before us the trial court considered the late-filed affidavit attached to the motion for reconsideration. The court expressly denied the motion for reconsideration. Therefore, the affidavit and photographs allegedly depicting a second pipeline on the right-of-way in question is not summary judgment evidence and we will not consider it. The affidavit testimony and photographs attached to the original response to the motion for summary judgment do not establish ongoing operations by Citgo or the ownership of a second pipeline on the right-of-way. The photographs allegedly show a "pipeline above land surface on Denman property." They do not purport to depict a second pipeline on the right-of-way in question, and in light of the numerous other oil and gas rights-of-way and pipelines on the Denman property, there is no reasonable inference the photographs are of a second pipeline on the right-of-way. In their original response to the motion for summary judgment, the Denmans also produced pictures of Citgo signs on the property, warn-

ing of petroleum pipelines. The presence of Citgo signs, which were subsequently changed to EOTT signs, does not address whether Citgo continued to own a second pipeline, or whether it was continuing to operate on the property.

Citgo produced summary judgment evidence it sold the Donaldson Lateral pipeline and ceased all operations on the property before the Denmans purchased it. The Denmans produced no evidence to controvert that. We conclude that *Senn* and *Pluff* are controlling and that, like the landowners in those cases, the Denmans lack standing to sue because any injury to their property occurred before they purchased it and their deed contains no assignment of any cause of action.

**Temporary or Permanent Injury**

The Denmans attempt to distinguish *Senn* and *Pluff* by asserting that the injury to their property is temporary in nature and that their cause of action accrues anew each day the action is not desisted. While it is questionable whether the injuries they allege are temporary,[3] this argument was directly rejected in *Senn*. The Eastland Court of Appeals regarded the distinction between temporary and permanent injuries as meaningless with respect to the issue of standing. *Senn*, 55 S.W.3d at 226. The court found that "[a]ny injury to the land that the defendants might have caused, whether temporary or permanent, occurred prior to the Senns' purchase of the land," and the

3. The character of an injury as either permanent or temporary is determined by its continuum. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). A permanent injury is constant and continuous, as opposed to occasional, intermittent, or recurrent. *Bayouth*, 671 S.W.2d at 868; *Kraft*, 565 S.W.2d at 227. A permanent injury results "from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Bayouth*, 671

S.W.2d at 868; *Atlas Chem. Indus., Inc. v. Anderson*, 524 S.W.2d 681, 684 (Tex.1975). Temporary injuries, however, have been found where the injury is not continuous, but is sporadic and contingent on some irregular force, such as rain. *Bayouth*, 671 S.W.2d at 868; *Kraft*, 565 S.W.2d at 227; *Atlas*, 524 S.W.2d at 685. The Denmans claim no sporadic injury, contingent on some irregular force, but a constant and continuous contamination of their property.

Senns, therefore, did not own any causes of action for either type of injury that may have been caused by the defendants. *Id.* The court in *Pluff,* 94 S.W.3d at 28, as discussed above, analyzed the distinction between permanent and temporary injuries and also determined that the characterization of the injury is not important to the inquiry on standing.

## Statutory Violations

The Denmans also contend Citgo violated Railroad Commission regulations and the Texas Litter Abatement Act, and that such statutory violations provide them standing to bring suit. The Denmans did not allege any causes of action for violation of any Railroad Commission regulations, and such violations therefore cannot provide them standing to sue.

The Denmans alleged violations of the Texas Litter Abatement Act only in their second amended petition, filed after the trial court granted Citgo's motion for summary judgment. Rule 166a, Texas Rules of Civil Procedure, provides that a summary judgment shall be rendered on the "pleadings ... on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, . . . ." Tex.R. Civ. P. 166a(c); *see also Automaker, Inc. v. C.C.R.T. Co.,* 976 S.W.2d 744, 745 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *Taylor v. Sunbelt Mgmt., Inc.,* 905 S.W.2d 743, 745 (Tex. App.-Houston [14th Dist.] 1995, no writ). Nonmovants must secure the court's permission to file an amended pleading after the hearing. Tex.R. Civ. P. 166a(c); *see also Automaker, Inc.,* 976 S.W.2d at 745. A trial court cannot grant a motion to amend the pleadings once the court renders judgment. *Automaker, Inc.,* 976 S.W.2d at 746. Here, the Denmans filed their second amended petition after the trial court granted Citgo's motion for sum-

mary judgment. The alleged violations of the Texas Litter Abatement Act, therefore, were not on file at the time of the summary judgment hearing and were not filed thereafter "before judgment with permission of the court." We will not consider them.

We affirm the judgment.