In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00131-CV
______________________________


ALLEN COOK, Appellant
 
V.
 
EXXON CORPORATION, Appellee


                                              

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. 2000-066


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

          Allen Cook sued Exxon Corporation for trespass and nuisance due to oilfield
equipment that had been left on the property before he purchased that property. Exxon
filed a motion for summary judgment alleging that Cook lacked standing, that Exxon had
no contractual or tort duty to remove the disputed items, that Cook failed to present any
evidence of damages, and that the statute of limitations barred Cook's suit. Cook appeals
the granting of the summary judgment motion. We affirm. 
          In his first point of error, Cook contends the trial court erred in concluding he lacked
standing. Cook argues, in his remaining points of error, that the question of whether the
lease imposes a duty on Exxon is irrelevant to his nuisance claim, that his tort claims are
not barred by the statute of limitations, that Exxon is committing a continuing tort, and that
there is evidence he suffered damages. 
          This opinion follows the precedent established by this Court in Denman, as well as
the precedent of our sister courts in Pluff and Senn.


 We further explain why the
characterization of an injury as temporary or permanent is not relevant under these
circumstances. The first section of our opinion examines why Cook lacks standing to
pursue this cause of action regardless of whether the injury was permanent or temporary. 
We first examine the holdings in Denman, Pluff, and Senn. Second, we explain Cook's
argument that a subsequent landowner may have standing to pursue a claim for a
temporary injury. Next, we examine the differences between temporary and permanent
injuries. Even if Cook's injury is temporary, Cook still does not have standing because he
has not sustained any new injuries since he has owned the property. A landowner lacks
standing to sue if the injury occurs before he owned the property, his or her deed contains
no assignment of the cause of action, and there is no evidence of a new injury since the
current landowner has owned the property. The second section of our opinion addresses
whether there is any evidence of a continuing tort. We determine Cook has failed to
produce more than a scintilla of evidence this injury is a continuing tort. Because these
issues are dispositive, we decline to examine the remaining points of error.
Factual Background
          In 1930, H. A. and Callie Piercy executed an oil and gas lease on the land in
question. Humble Oil and Refining Company (predecessor of Exxon) developed the lease
in the 1930s and drilled a number of oil wells on the land. On or about April 17, 1990,
Exxon ceased operations on the property and assigned the lease to 4-Sight Operating
Company. Cook stated that to his knowledge Exxon had not conducted activities related
to oil and gas production on the land in question after December 1, 1991. 
          In May 1994, Cook contracted to buy from the Piercy family the surface estate of
the property in dispute. Before closing the purchase, Cook received the commitment for
a title policy, which disclosed the oil and gas lease entered into by the Piercys in 1930. On
May 23, 1994, the Piercys executed and delivered a general warranty deed to Cook
conveying the surface estate of the property in question. 
          In March 2000, Cook filed suit against Exxon, alleging breach of contract,
negligence, excessive use, nuisance, and trespass in connection with abandoned oilfield
equipment left on his property. In his suit, Cook complained about concrete derrick
corners, concrete equipment pads, and other miscellaneous debris at the sites of plugged
and abandoned oil wells. Cook stated these materials were probably installed before 1950. 
Cook also complained the ground was not level where some old pits had been located. 
The trial court granted Exxon's motion for summary judgment. Cook appeals.
Standard of Review
          When a trial court's order granting summary judgment does not specify the ground
or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of
the theories advanced are meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995); Wilkinson v. Dallas/Fort Worth Int'l Airport Bd., 54 S.W.3d 1, 12 (Tex.
App.—Dallas 2001, pet. denied). Exxon's motion for summary judgment alleged (1) that
there was no evidence Cook had standing to sue, (2) that Exxon had no tort or contract
duty to Cook, (3) that Cook suffered no damages, (4) that the two-year statute of limitations
barred any possible tort claim, and (5) that the four-year statute of limitations barred any
possible contract claim. 
          A no-evidence summary judgment is essentially a pretrial motion for a directed
verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence
summary judgment as we apply in reviewing a directed verdict. King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003); Wal-Mart Stores, Inc. v. Rodriguez, 92
S.W.3d 502, 506 (Tex. 2002). We must determine whether the nonmovant produced any
evidence of probative force to raise a fact issue on the material questions presented. 
Rodriquez, 92 S.W.3d at 506; Woodruff v. Wright, 51 S.W.3d 727, 734 (Tex.
App.—Texarkana 2001, pet. denied). 
A no evidence point will be sustained when (a) there is a complete absence
of evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a mere scintilla,
or (d) the evidence conclusively establishes the opposite of the vital fact.

King Ranch, Inc., 118 S.W.3d at 751. We consider all the evidence in the light most
favorable to the party against whom the no-evidence summary judgment was rendered,
disregarding all contrary evidence and inferences. Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly
granted if the nonmovant presents more than a scintilla of probative evidence to raise a
genuine issue of material fact. King Ranch, Inc., 118 S.W.3d at 751; Jackson v. Fiesta
Mart, Inc., 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.). More than a scintilla
of evidence exists when the evidence "rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc., 953 S.W.2d
at 711.
Cook Lacks Standing
          The circumstances of this case are nearly identical to those this Court examined in
Denman, 123 S.W.3d 728. In Denman, this Court held that a landowner lacks standing to
sue for injury to real property when any injury occurred before the landowner acquired the
property, his or her deed contains no assignment of any cause of action, and there is no
evidence of a new injury since the current landowner has owned the property. Id. at
734–35. Similar to Denman, Cook lacks standing to bring this cause of action.
          Standing is a necessary component of subject-matter jurisdiction, which is essential
to the authority of the court to decide a dispute. Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 445–46 (Tex. 1993). The determination of subject-matter jurisdiction is
a question of law subject to de novo review. See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998). Accordingly, we review de novo the trial court's
determination of standing. See id. 
          Only the person whose primary legal right has been breached has standing to seek
redress for an injury. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976). Stated
differently, a person has standing to sue only when he or she is personally aggrieved by
an alleged wrong. Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659,
661 (Tex. 1996). "Without a breach of a legal right belonging to a plaintiff, that plaintiff has
no standing to litigate." Denman, 123 S.W.3d at 732; Brunson v. Woolsey, 63 S.W.3d 583,
587 (Tex. App.—Fort Worth 2001, no pet.). 
          Cook must have a cause of action for injury to the property in order to have
standing. Denman, 123 S.W.3d at 732; see Nobles, 533 S.W.2d at 927. The cause of
action for an injury to property belongs to the person owning the property at the time of the
injury. Abbott v. City of Princeton, 721 S.W.2d 872, 875 (Tex. App.—Dallas 1986, writ ref'd
n.r.e.); Lay v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd
n.r.e.). Without express provision, the cause of action does not pass to a subsequent
purchaser of the property. Abbott, 721 S.W.2d at 875; Lay, 599 S.W.2d at 686. Without
such an express provision, a subsequent purchaser cannot recover for an injury committed
before his or her purchase. Lay, 599 S.W.2d at 686.
          Exxon relies on Denman, Pluff, and Senn. All three of these cases held that the
cause of action for injuries to property belongs to the owner of the property at the time of
the alleged injuries and that subsequent purchasers lack standing to sue, absent an
express provision in the deed granting them that power. Denman, 123 S.W.3d at 734;
Pluff, 94 S.W.3d at 28; Senn, 55 S.W.3d at 226. In Senn, the Eastland Court of Appeals
regarded the distinction between temporary and permanent injuries as meaningless with
respect to the issue of standing. Senn, 55 S.W.3d at 226. The court found that "[a]ny
injury to the land that the defendants might have caused, whether temporary or permanent,
occurred prior to the Senns' purchase of the land" and the Senns, therefore, did not own
any causes of action for either type of injury that may have been caused by the
defendants. Id. The Tyler Court of Appeals and this Court followed the reasoning of the
Eastland Court of Appeals. Denman, 123 S.W.3d at 734–35; Pluff, 94 S.W.3d at 28. Cook
argues that Denman, Pluff, and Senn are incorrect because a subsequent owner does
have standing if the injury is temporary.
          In Senn, several oil and gas producers allegedly caused permanent and temporary
injuries to a ranch by contaminating the aquifer underlying the land. Senn, 55 S.W.3d at
224. The Senns purchased the property after all the drilling and production activities of the
defendant producers had ceased. Id. at 224–25. The Eastland Court of Appeals relied on
the following well-established rule:
Where injury to land results from a thing that the law regards as a
permanent nuisance, the right of action for all the damages resulting from the
injury accrues to the owner of the land at the time the thing that causes the
injury commences to affect the land.
 
Id. at 225 (quoting Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d 561, 562
(1936)). Based on this principle applicable to permanent nuisances, the court found the
Senns lacked standing to bring suit for any type of injury to the land, whether permanent
or temporary, that occurred before their purchase. Senn, 55 S.W.3d at 226. In Senn, the
Eastland Court of Appeals regarded the distinction between temporary and permanent
injuries as irrelevant with respect to the issue of standing. Id. The court noted that, while
the rule in Vann may seem harsh as applied to the Senns, the Senns could have avoided
its application by bargaining for an assignment of the prior owner's possible causes of
action for injuries to the land that occurred before the purchase, insisting that the sellers
give them warranties about the condition of the land in the deed, or performing a more
thorough inspection of the land. Id.
          In Pluff, a landowner sued Exxon based on the oil company's failure to remove all
of the oilfield materials used in the drilling and operation of oil wells on his property before
his purchase of the land. Pluff, 94 S.W.3d at 26. All of the oilfield materials were on the
property on the date of Pluff's purchase, which was after the cessation of Exxon's drilling
and production activities on the property. Id. at 27. The subsequent landowners lacked
standing because they had failed to show that any injury occurred during their ownership
of the land. Pluff, 94 S.W.3d at 28. In adopting the reasoning of the Eastland Court of
Appeals' decision in Senn, the Tyler Court of Appeals held that, "in determining standing,
the characterization of the injury [is] not important; it [is] the fact of injury that [is] critical." 
Id. The court concluded that the undisputed evidence "showed a continuing condition that
already existed on the date of purchase," and "[w]ithout a new injury that occurred after
they purchased the property or an assignment of a cause of action for the prior injury, the
[plaintiff] had not been aggrieved and therefore had no standing." Id.
          In Denman, this Court followed both Senn and Pluff, and held that, when any injury
to a landowner's property occurred before the purchase, and the deed contains no
assignment of any cause of action, the landowner lacks standing to sue. Denman, 123
S.W.3d at 734–35. The Denmans sued Citgo for removal of concrete pillars, deadmans,



and asbestos-covered pipelines on their land. Id. at 731. They alleged Citgo had ongoing
operations on the property, but failed to introduce evidence raising a fact issue concerning
that allegation. Id. at 734. The court in Denman noted that Citgo had sold the pipeline in
dispute and that there was no evidence Citgo had any ongoing operations on the property. 
Id. The court in Denman concluded that the Denmans lacked standing to sue when "any
injury to their property occurred before they purchased it and their deed contains no
assignment of any cause of action." Id.
          Cook argues there is a fact issue concerning standing because the injury is
temporary. Cook contends that, if the injury is temporary, he has standing to pursue the
claim. In Senn, the Eastland Court of Appeals regarded the distinction between temporary
and permanent injuries as meaningless with respect to the issue of standing. Senn, 55
S.W.3d at 226. We note that the Eastland Court of Appeals relied on a case which
concerned a permanent nuisance. See id. at 225 (quoting Vann, 90 S.W.2d at 562).
          There are significant differences between a permanent and temporary injury. 
"Temporary injuries give rise to temporary damages, which are the amount of damages
that accrued during the continuance of the injury covered by the period for which the action
is brought." Bayouth v. Lion Oil Co., 671 S.W.2d 867, 868 (Tex. 1984). While a cause of
action for a permanent injury accrues on the date of the injury, damages for temporary
injuries may be recovered for the two years prior to filing suit. Id. For a temporary injury,
the cause of action accrues when each separate injury occurs. Atlas Chem. Indus., Inc.
v. Anderson, 524 S.W.2d 681, 685 (Tex. 1975) (quoting Austin & N.W. Ry. Co. v.
Anderson, 79 Tex. 427, 15 S.W. 484 (1891)), overruled on other grounds, Neely v. Cmty.
Props., Inc., 639 S.W.2d 452, 454 (Tex. 1982); Pluff, 94 S.W.3d at 27–28; see Nugent v.
Pilgrim's Pride Corp., 30 S.W.3d 562, 568 (Tex. App.—Texarkana 2000, pet. denied). The
rationale underlying the rule that the cause of action for temporary damages accrues at the
time the damages occur is that "[a] cause of action for damaging land does not lie for
anticipated future damages that have not yet occurred." Allen v. City of Tex. City, 775
S.W.2d 863, 866 (Tex. App.—Houston [1st Dist.] 1989, writ denied); see Corley v. Exxon
Pipeline Co., 821 S.W.2d 435, 437 (Tex. App.—Houston [14th Dist.] 1991, writ denied). 
Cook contends a temporary injury is different from a permanent injury in that a subsequent
purchaser may be personally aggrieved. Cook alleges a temporary injury causes a new
injury every day the conduct is repeated and, therefore, he is personally aggrieved.
          The character of an injury as either permanent or temporary should be determined
by its continuum. Bayouth, 671 S.W.2d at 868; see Burke v. Union Pac. Res. Co., 138
S.W.3d 46, 59 (Tex. App.—Texarkana 2004, pet. filed). A permanent injury is constant
and continuous, as opposed to occasional, intermittent, or recurrent. Bayouth, 671 S.W.2d
at 868; Kraft v. Langford, 565 S.W.2d 223, 227 (Tex. 1978). It results "from an activity of
such a character and existing under such circumstances that it will be presumed to
continue indefinitely." Bayouth, 671 S.W.2d at 868. In evaluating an injury's continuum,
the fact-finder should consider the two characteristics of a temporary injury: whether it is
caused by irregular forces and whether the injury-causing activity can be easily enjoined.



          The first characteristic is whether the injury was caused by irregular forces. Burke,
138 S.W.3d at 59. In Bayouth, the Texas Supreme Court held that:
The character of an injury as either permanent or temporary is
determined by its continuum. Permanent injuries to land result from an
activity of such a character and existing under such circumstances that it will
be presumed to continue indefinitely; the injury must be constant and
continuous, not occasional, intermittent or recurrent. Temporary injuries,
however, have been found where the injury is not continuous, but is sporadic
and contingent upon some irregular force such as rain. Kraft v. Langford,
565 S.W.2d 223 (Tex. 1978); Atlas Chemical Industries, Inc. v. Anderson,
supra at 685.

Bayouth, 671 S.W.2d at 868–69. Temporary injuries are sporadic and contingent on some
irregular force, such as rain. Kraft, 565 S.W.2d at 227; Atlas Chem. Indus., Inc., 524
S.W.2d at 685; see Rosenthal v. Taylor, 79 Tex. 325, 15 S.W. 268, 269 (1891). 
          The second characteristic is whether an injunction would abate the injury. 
Burke,138 S.W.3d at 59. The Texas Supreme Court has recognized that the ability to
enjoin successfully the activity or condition causing the damage indicates that the injury
could be temporary.


 Kraft held that "[a]nother characteristic of a temporary injury is the
ability of a court of equity to enjoin the injury causing activity." Kraft, 565 S.W.2d at 227. 
"An injury which can be terminated cannot be a permanent injury." Id. While the ability to
abate an injury with an injunction is a characteristic of a temporary injury, the unavailability
of an injunction does not require a finding of a permanent injury. Burke, 138 S.W.3d at 59;
City of Odessa v. Bell, 787 S.W.2d 525, 530 (Tex. App.—El Paso 1990, no writ).
          Even if the distinction between temporary and permanent is relevant to the issue of
standing, a current owner would have standing only if a new injury occurred while he or she
owned the property. For a temporary injury, the cause of action accrues when each
separate injury occurs. Atlas Chem. Indus., Inc., 524 S.W.2d at 685; Pluff, 94 S.W.3d at
27; see Nugent, 30 S.W.3d at 568. While Cook did not present any evidence that the
injury was caused by irregular forces such as rain or wind, he did present some evidence
an injunction could abate the injury. In general, the question of whether injury to property
is permanent or temporary is a question of fact for the jury.


 A temporary injury is
essentially a series of injuries which occur over time. "Temporary injuries give rise to
temporary damages, which are the amount of damages that accrued during the
continuance of the injury covered by the period for which the action is brought." Bayouth,
671 S.W.2d at 868. If the injury is temporary, Cook could only recover for new injuries
sustained during the last two years. See id. Even if the evidence produced by Cook that
the injury can easily be removed is more than a scintilla of evidence that the injury is
temporary, Cook must present evidence a new injury occurred while he has owned the
land. 
          Cook failed to present any evidence of new injuries. The only damages alleged are
the decrease in value of the land due to the physical presence of the concrete derrick
corners and pipes. Cook presented evidence his property is worth $79,140.00 with the
abandoned equipment and $158,300.00 without it. However, these damages were
incurred when Exxon abandoned the equipment. Cook stated he had seen at least some
of the concrete derrick corners before he purchased the property. Cook was aware that
the land had been used for oil and gas production for many years and observed that
4-Sight was operating three active oil wells on the property at the time of his purchase. 
Cook had experience working in the oil and gas industry. He admitted these materials
were probably installed before 1950. Cook admitted Exxon did not operate any of the wells
on the property at any time he owned the land. Once the equipment was abandoned, the
damage to the property was complete. In this case, it is uncontroverted that Exxon ceased
operations on the property in question before Cook purchased the property and that, since
the sale, Exxon has not conducted any operations on the property. Exxon's act in
abandoning the equipment has not affected the condition of the property since Cook
purchased it. Cook has failed to produce more than a scintilla of evidence any new injury
to the land occurred after he purchased the land. 
          The trial court did not err in determining Cook lacked standing. Even if a landowner
has standing to sue for a temporary injury to property which occurred before he or she
owned the property, the landowner must still show that he or she has sustained a new
injury since acquiring the property. Cook failed to present any evidence of a new injury
since his acquisition. Therefore, regardless of whether the injury is permanent or
temporary, Cook lacks standing to sue.
No Evidence of a Continuing Tort
          Cook alleges the trial court erred in rendering summary judgment because the tort
is a continuing tort.


 Cook has not raised a material issue of fact concerning a continuing
tort. "A continuous tort involves wrongful conduct that is repeated until desisted, and each
day creates a separate cause of action." Loyd, 956 S.W.2d at 127; see Dickson Constr.,
Inc. v. Fid. & Deposit Co., 960 S.W.2d 845, 851 (Tex. App.—Texarkana 1997, no pet.); see
also Jim Arnold Corp. v. Bishop, 928 S.W.2d 761, 766 (Tex. App.—Beaumont 1996, no
writ). There is no evidence of any wrongful conduct that has been repeated by Exxon. 
Cook failed to present any evidence Exxon had committed any wrongful conduct since it
assigned the lease to 4-Sight. It is undisputed Exxon has not conducted any activities on
the property since the assignment of the lease. Without any evidence of repeated wrongful
conduct, Cook has not presented more than a scintilla of probative evidence to raise a
genuine issue of material fact concerning the continuous tort.
Conclusion
          Similar to Denman, Pluff and Senn, a landowner does not have standing to pursue
a cause of action when he or she acquired the property after the injury occurred, the deed
contains no assignment of the cause of action, and there is no evidence of a new injury
since the current landowner has owned the property. Cook has failed to present any
evidence he has sustained a new injury since he acquired the property. Thus, Cook lacks
standing to pursue a claim for injury to the property regardless of whether the injury is
permanent or temporary. Since there is no evidence of a continuing tort and Cook lacks
standing to pursue this cause of action, we affirm the judgment of the trial court. 
 
                                                                           Jack Carter
                                                                           Justice


Date Submitted:      August 25, 2004
Date Decided:         September 10, 2004