

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00452-CV

MICHAEL MCDANIEL

APPELLANT

V.

THE TOWN OF DOUBLE OAK

APPELLEE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

The primary issue we address in this appeal is whether the trial court erred by determining that it did not possess jurisdiction over three claims asserted by Appellant Michael McDaniel against the Town of Double Oak (the Town). Because we hold that the trial court possesses jurisdiction over McDaniel's claims, we reverse the trial court's order dismissing McDaniel's claims for want of

---

[1]*See* Tex. R. App. P. 47.4.

jurisdiction, and we remand the case to the trial court for further proceedings consistent with this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

McDaniel owned a fourteen-acre piece of property in the Town. He wanted to construct and operate a self-storage facility on the property. Because the Town's zoning ordinance did not permit that use, McDaniel proposed and obtained approval from the planning and zoning commission for a specific use permit (SUP). The Town Council then unanimously passed Ordinance No. 04-07, granting McDaniel's SUP. After McDaniel submitted detailed architectural plans along with the rest of his building permit application, the Town approved the plans and issued McDaniel a permit. When McDaniel attempted to construct a monument sign for the self-storage facility as indicated on the SUP, the Town officials informed McDaniel that he must submit another application, pay another fee, and obtain another permit to erect the sign. McDaniel complied, and the Town then refused to grant him a permit to erect the sign. Further disputes arose between McDaniel and the Town concerning the assessments that he was required to pay for sewer connection fees at the self-storage facility and the building permit fees that he was ultimately required to pay after the Town inspected his facility. McDaniel paid all of the required fees and, subsequently, filed this lawsuit.

McDaniel's suit sought recoupment of fees he alleged were improperly charged by the Town for the sewer tap and for building permit fees and also sought a declaration that he could erect the sign. The Town filed a plea to the jurisdiction as to the two fee recoupment claims asserted by McDaniel; the Town expressly conceded that it did not possess immunity for McDaniel's declaratory

2

judgment claim concerning the sign.[2]  The Town sought summary judgment on that claim.  McDaniel also sought summary judgment on the sign claim.  The trial court granted McDaniel summary judgment on his sign claim and denied the Town's plea to the jurisdiction.  The Town perfected an interlocutory appeal of the trial court's ruling on its plea to the jurisdiction,[3] and this court reversed the trial court's ruling on the Town's plea to the jurisdiction; we specifically required, however, that McDaniel be given an opportunity to replead his claims.[4]  Back in the trial court, the Town filed a second plea to the jurisdiction asserting the same grounds as its first plea to the jurisdiction, and in accordance with our opinion, the trial court then entered an order granting the Town's plea to the jurisdiction and permitting McDaniel to replead.

McDaniel repleaded his two fee claims, adding constitutional challenges to the sewer tap fee claim and the building permit fee claim.[5]  The Town filed a third plea to the jurisdiction, again asserting the same grounds as its other two pleas

---

[2]The Town pleaded, "The sole claim of Plaintiff that is not barred by immunity is the request that the Court issue a declaration that the Town had approved his commercial sign when it granted him the specific use permit."

[3]In the interlocutory appeal, we specifically noted that McDaniel's sign claim was not before us.  *See Town of Double Oak v. McDaniel*, No. 02-09-00046-CV, 2009 WL 2579613, at *3 n.7 (Tex. App.—Fort Worth 2009, no pet.).

[4]*Id*. at *4 (remanding McDaniel's declaratory judgment claims to the trial court to afford McDaniel the opportunity to replead).

[5]McDaniel actually added his constitutional claims to an earlier petition, but they were not addressed by the Town's plea to the jurisdiction and consequently were specifically not addressed by this court in the Town's interlocutory appeal. *See id.* at *3 n.3 (noting that "[i]n McDaniel's most recent petition, he adds claims for violations of the Texas constitution.  These claims were not addressed in [the Town's] plea to the jurisdiction").

3

to the jurisdiction except incorporating claims that the trial court also lacked jurisdiction over McDaniel's constitutional claims. The trial court denied the Town's third plea to the jurisdiction, and McDaniel's two fee claims proceeded to a two-day nonjury trial. At the conclusion of the bench trial, the trial court signed an order of dismissal, specifically finding that it lacked jurisdiction and ordering "all claims herein be and are hereby dismissed." The trial court also signed findings of fact and conclusions of law.

McDaniel perfected this appeal from the order of dismissal. In two issues, McDaniel claims that the trial court does possess jurisdiction over all three of his claims: the sign claim, the sewer tap fee claim, and the building permit fee claim. The Town responds that it possesses immunity from all of McDaniel's claims under various theories; the Town also argues that McDaniel lost his standing after he filed suit by selling the storage facility and that, therefore, the trial court properly dismissed all of McDaniel's claims.

### III. STANDARD OF REVIEW

The parties disagree on the applicable standard of review. McDaniel urges us to apply the standard of review applicable to pleas to the jurisdiction, arguing that by signing an order that dismissed his "case and all claims" and that expressly stated that "the Court finds that it does not have jurisdiction," the trial court granted the Town's third plea to the jurisdiction and did not reach the merits of any of McDaniel's claims. The Town, on the other hand, urges us to apply the legal and factual sufficiency standards of review applicable to findings of fact and conclusions of law, arguing that McDaniel's claims were tried in a two-day bench trial, that the trial court signed findings of fact and conclusions of law, and that

4

the order of dismissal must be upheld on any theory supported by the findings of fact and conclusions of law, whether merit-based or related to jurisdiction.

McDaniel and the Town are both partially correct. We agree with McDaniel that, because the trial court signed an order dismissing all of his claims for want of jurisdiction, the trial court ruled only on the jurisdictional issue and did not reach the merits of his claims except to the extent necessary to resolve the jurisdictional issues. *See, e.g., Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (explaining that in reaching a decision on jurisdiction, the trial court does not weigh merits of claims). We agree with the Town that because the trial court resolved the jurisdictional issue at the trial on the merits, acting as the factfinder to resolve disputed jurisdictional facts implicating the merits of McDaniel's claims, *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004) (recognizing that in some cases the jurisdictional facts implicated in the sovereign's plea to the jurisdiction are so intertwined with the underlying merits that the factfinder must resolve the disputed facts concerning jurisdiction at a trial on the merits), its unchallenged jurisdictional-related findings of fact are binding on this court unless the contrary is established as a matter of law. *Id*.; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Because the appellate record contains a complete reporter's record of the trial, the trial court's jurisdictional-related findings of fact may be challenged for and reviewed for legal and factual sufficiency of the evidence. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

5

The trial court's nonjurisdictional-related findings of fact, however, are not relevant to our review of whether the trial court properly dismissed all of McDaniel's claims for want of jurisdiction. *See Miranda*, 133 S.W.3d at 226, 228 (recognizing trial court reviews only jurisdictional-related evidence in determining jurisdiction); *Cnty. of Cameron*, 80 S.W.3d at 555 (limiting jurisdictional inquiry to review of evidence related to jurisdiction).

Thus, in summary, as set forth above, because the trial court ruled on the jurisdictional issues following a bench trial, we review the trial court's findings of fact related to jurisdiction that are challenged on appeal for legal and factual sufficiency; we review the trial court's legal conclusions regarding jurisdiction de novo; and we do not review at all the trial court's findings of fact or conclusions of law that are related only to the merits of McDaniel's claims and not to jurisdiction. *See Miranda*, 133 S.W.3d at 226, 228.

In reviewing the trial court's findings of fact related to jurisdiction that are challenged on appeal, we utilize the same standards that we apply in reviewing jury findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Ahmed v. Ahmed*, 261 S.W.3d 190, 193–94 (Tex. App.—Houston [14th Dist.] 2008, no pet.). When reviewing the legal sufficiency of the evidence to support a finding of fact, we determine whether the evidence would enable reasonable and fair-minded people to reach the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In conducting this review, we credit favorable evidence if reasonable factfinders could and disregard contrary

6

evidence unless reasonable factfinders could not. *Id.* We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. We must, and may only, sustain no-evidence points when either the record reveals a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

## IV. THE TOWN'S ALTERNATIVE THEORIES

Before addressing McDaniel's challenges to the trial court's dismissal of his claims, we address the Town's contentions that, regardless of the propriety of the trial court's ruling on the Town's plea to the jurisdiction, the trial court properly dismissed all of McDaniel's claims because (1) although McDaniel may have possessed standing when he filed suit, he "lost" standing to assert all of his claims when he sold the property during litigation; (2) McDaniel did not challenge the validity of the sewer tap fee ordinance or the building permit fee ordinance; and (3) the trial court found that McDaniel voluntarily paid the fees without protest and without duress.

### A. McDaniel's Standing

The Town asserts that the trial court properly dismissed all of McDaniel's claims because McDaniel "lost" standing to assert them when, in 2008 during the course of the litigation, he sold the self-storage facility property to MeMc I, LLC.

7

In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). The cause of action for an injury to property belongs to the person owning the property at the time of the injury. *Vial v. Gas Solutions, Ltd*., 187 S.W.3d 220, 226–27 (Tex. App.—Texarkana 2006, no pet.); *Glover v. Union Pac. R.R. Co*., 187 S.W.3d 201, 209 (Tex. App.—Texarkana 2006, pet. denied); *see also Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 732 (Tex. App.—Texarkana 2003, no pet.) (holding plaintiff property owners lacked standing when injury to property occurred before plaintiffs purchased the property and their deeds contained no assignment of any cause of action). Only the person whose primary legal right has been breached has standing to seek redress for an injury. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976); *Glover*, 187 S.W.3d at 209.

Here, the Town contends that McDaniel possessed standing when he filed suit because he owned the property but that his sale of the property during the litigation deprived him of standing. To the extent ownership of the property is relevant to McDaniel's standing, he owned the property at the time of the payment of the building permit fees and sewer tap fees that he claims were improperly calculated, and he paid them personally. He also owned the property when the Town decided that the SUP did not authorize him to erect a monument sign and denied him the right to do so. Thus, McDaniel possesses standing regardless of any subsequent sale of the property. *Vial*, 187 S.W.3d at 226–27;

8

*Glover*, 187 S.W.3d at 209; *see also Denman,* 123 S.W.3d at 732. And, more importantly, despite the sale of the property, McDaniel pleaded and proved for jurisdictional purposes that he suffered a particularized injury distinct from that suffered by the general public. *See, e.g., Bland ISD v. Blue*, 34 S.W.3d 547, 555–56 (Tex. 2000); *Glover*, 187 S.W.3d at 209. We reject the Town's contention that McDaniel's sale of the self-storage facility in 2008 after he had personally paid the building permit fees and sewer tap fees and after the Town had denied him the right to erect a monument sign caused him to lose standing.

## B. Challenges to Ordinances

The Town claims that McDaniel failed to challenge the validity of the ordinances at issue. But the record reflects that McDaniel does not complain of the invalidity of the ordinances; he instead complains that the way in which the Town applied the valid ordinances to him was unconstitutional. McDaniel claims that the Town miscomputed the sewer tap fees he owed under the sewer tap ordinance, resulting in an overcharge,[6] and misapplied portions of the building fee permit ordinance to his property, also resulting in an overcharge, not that the ordinances themselves are invalid. McDaniel's fifth amended petition pleaded in part, "Plaintiff is, inter alia, requesting that this Honorable Court declare the

---

[6]The Town concedes that it did miscalculate the sewer tap fees and that McDaniel proved the miscalculation at trial; the Town's appellate brief states, "It is important to note that in this appeal the Town does not maintain that the sewer tap fee was calculated correctly. The language of the ordinance and the proof regarding the way in which the fee was calculated suggest that the Town erred in its calculation."

*application* of the Ordinance to be violative of Plaintiff's rights guaranteed to them by the Texas Constitution." [Emphasis added]. McDaniel specifically pleaded that the illegal fees imposed by the Town under its sewer tap fee ordinance and its building fee permit ordinance amounted to a taking without due process of law. Thus, contrary to the Town's contention, McDaniel did challenge the ordinances to the extent he challenged the way, and the constitutionality of the way, that the Town applied them to him; the Town has not cited, and we have not located, case law supporting the proposition that anything more is required when a plaintiff challenges the legality or constitutionality of fees based on the way a municipality computed the fees owed by the plaintiff under a particular ordinance.

## C. Payment Under Protest

The trial court's findings of fact 10 and 11 state, respectively, that "[a]ll building permit fees and sewer connection or tap fees were paid voluntarily with full knowledge and awareness of all facts, and without mutual mistake of fact, fraud or duress," and "[a]ll building permit fees and sewer connection or tap fees were paid without protest." McDaniel pleaded that all fees were paid under protest[7] and on appeal challenges the legal sufficiency of the evidence to support

---

[7]Specifically, McDaniel pleaded concerning the sewer tap fee that he paid "the fee under duress so that he could complete his development on time"; concerning the building permit fee, he pleaded that he "paid these fees under duress. Both the Town and its attorney made it clear that if McDaniel did not pay the fees he would not be permitted to construct his project and could also face significant penalties"; and concerning both fees generally, he pleaded that "the financially crippling over-invoicing . . . has left McDaniel unable to maximize the commercial property's value, resulting in significant financial harm[,]" that he

10

findings of fact 10 and 11. McDaniel argues that the evidence conclusively establishes the opposite of findings of fact 10 and 11; that is, that he paid the fees under business compulsion, duress, or implied duress.

Charles Wright, the building official and the director of public works for the Town, testified:

> Q. Did -- Mr. McDaniel ultimately paid the amounts that are represented in Exhibit 18, correct?
>
> A. Yes.
>
> Q. And if he had not paid that amount that you specified, would he have been able to build the project that had been approved by the SUP?
>
> A. No, he would not.
>
> Q. He would not have been able to go forward at all?
>
> A. Not at all, not without being fined.
>
> Q. And not only not -- not being fined, but it'd be a criminal violation wouldn't it?
>
> A. It could be.
>
> Q. And this Town could prosecute him?

---

"paid the fees under protest and under the continued duress of the Town's comply or close your business mentality[,]" that "McDaniel continues to suffer damages as a result of Double Oak's persistent refusal to properly apply its own city ordinance[,]" that the illegal portion of the fees constituted a taking that was "completed without McDaniel's voluntary consent[,]" and that "McDaniel protested the amount of fees before paying; however, Double Oak refused to return the excess permit fee amounts he was forced to pay." Likewise, on appeal, McDaniel argues that the evidence conclusively established he paid the fees under protest.

11

A. It'd be a -- to my knowledge, it would be a Class C misdemeanor.

Concerning the sewer tap fees, McDaniel testified:

Q. If you hadn't paid the sewer tap fee, would you have been able to tap into the sewer line?

A. I don't believe so.

Q. Did you need the sewer line to operate your business?

A. Yes.

The supreme court has repeatedly recognized that business compulsion constitutes duress and defeats a claim of voluntary payment of an illegal tax or fee. *See Lowenberg v. City of Dallas*, 261 S.W.3d 54, 59–60 (Tex. 2008) (holding that payment of city fee implemented through city ordinance and assessed against commercial buildings to generate funds for fire protection services was not voluntary when nonpayment of the fee constituted a Class C misdemeanor); *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (holding compulsion implied by the threat of statutory penalties and interest for failure to pay the governmental exaction); *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 237 (Tex. 1982) (holding that duress may be implied from a statute that imposes a penalty and interest for failure to timely pay a tax); *State v. Akin Prods. Co.*, 286 S.W.2d 110, 111–12 (Tex. 1956) (holding that if a reasonably prudent man finds that in order to preserve his property or protect his business interest it is necessary to make a payment of money which he does not owe, the taxes are paid under duress); *Crow v. City of Corpus Christi*, 146 Tex. 558, 563, 209 S.W.2d 922, 925 (1948) (holding city ordinance requiring payment of illegal cab operator's license fee under threat of forfeiting the right to do business

12

constituted payment under duress or business compulsion as a matter of law). The evidence in the record before us conclusively establishes that McDaniel's payment of the fees was not voluntary; we need not decide whether he paid the fees under the theory of business compulsion, the theory of duress, or the theory of implied duress. The record conclusively establishes that McDaniel's payment of the fees was not voluntary because payment was necessary to avoid committing a Class C misdemeanor, to preserve his property, to protect his business interest, and to avoid forfeiting his right to do business as a self-storage facility.

Findings of fact numbers 10 and 11 are supported by legally insufficient evidence. In fact, the evidence conclusively establishes the opposite of these findings; that is, the evidence conclusively establishes that McDaniel did not voluntarily pay the fees. *See City of Keller*, 168 S.W.3d at 810 (explaining that appellate court must sustain no-evidence challenge when the evidence conclusively establishes the opposite of the challenged fact). So, to the extent findings of fact 10 and 11 may be intertwined with the jurisdictional issue, because they are supported by legally insufficient evidence, they provide no factual basis for the trial court's legal ruling that it lacked jurisdiction over all of McDaniel's claims.

Having determined that each of the three alternative theories propounded by the Town for affirming the trial court's dismissal order are not meritorious, we next address McDaniel's two issues challenging the order dismissing his claims for want of jurisdiction.

## V. THE TRIAL COURT POSSESSES JURISDICTION OVER MCDANIEL'S CLAIMS

### A. The Sign Claim

The Town never asserted immunity concerning McDaniel's sign claim. To the contrary, the Town pleaded that McDaniel's sign claim was not barred by immunity by pleading: "The sole claim of Plaintiff that is not barred by immunity is the request that the Court issue a declaration that the Town had approved his commercial sign when it granted him the specific use permit." And prior to the Town's interlocutory appeal, McDaniel pleaded for—and after the interlocutory appeal he obtained—a February 5, 2009 declaratory judgment summary judgment that the SUP granted by the Town to McDaniel authorized him to erect a monument sign. Specifically, the summary judgment granted to McDaniel provided:

Therefore, it is hereby:

ORDERED, ADJUDGED AND DECREED that Plaintiff Michael McDaniel's Partial Motion for Summary Judgment is GRANTED;

It is further ORDERED, ADJUDGED AND DECLARED that Defendant The Town of Double Oak ("Double Oak") approved Plaintiff Michael McDaniel's ("McDaniel") monument sign when Double Oak granted McDaniel's Specific Use Permit application ("SUP") and adopted an ordinance granting the SUP;

It is further ORDERED, ADJUDGED AND DECLARED that McDaniel is entitled to install a monument sign as set forth in the plat approved and adopted during the SUP process, the architectural review process[,] and the Ordinance Amendment, and shall be installed as specifically designated in Exhibit "A", attached hereto[.]

We have thoroughly reviewed the reporter's record from the bench trial

and the exhibits admitted into evidence. McDaniel's sign claim was not mentioned in any way during the trial; it was simply not tried in the bench trial conducted before the court. Indeed, why would it have been since a summary judgment had been granted on that claim? Instead, during closing arguments, the Town argued for the first time to the trial court:

> [Y]ou should reconsider the -- the interim summary judgment that -- that granted them the relief that they're asking for in connection with the monument sign. *I didn't produce any evidence*, and – and the only thing that I can do about that -- frankly, there's nothing that I can do about that unless and until there's an appeal of this case. That issue was based solely on an interpretation of the actual SUP that gave him the right to operate this business in the first place. . . . In any event, I could not take an interlocutory appeal on that part of the -- of the February 2009 orders because it was -- it was an interim summary judgment, not a plea to the jurisdiction. I did not have the right to take an interlocutory appeal. . . . If they lack standing to bring this lawsuit at all, if -- MeMcI is the real party in interest, and in fact it is, and MeMcI has never sued the Town of Double Oak, then this case has to be dismissed which means all of it has to be dismissed, including the interim orders. [Emphasis added].

The Town conceded in closing argument, as quoted and italicized above, that no evidence was admitted at trial concerning McDaniel's sign claim.

Although no evidence exists in the record concerning the sign claim, the trial court's finding of fact number 8 nonetheless states that

> [t]he claims of Plaintiff relating to the monument sign are brought under the Texas Declaratory Judgment Act, Chapter 37, Texas Civil Practice and Remedies Code. The claims assert that a Specific Use Permit zoning ordinance adopted by the Town in 2004 granted him the right to construct a monument sign in specific dimensions and design. This ordinance does not specify the dimensions or design of the monument sign and does not authorize the construction of a monument sign.

15

No evidence supports finding of fact number 8; and moreover, to the extent finding of fact number 8 reaches the merits of McDaniel's sign claim, it is not pertinent to our analysis of whether the trial court possessed jurisdiction over McDaniel's sign claim and erred by dismissing the sign claim for want of jurisdiction. For both of these reasons, we disregard finding of fact number 8.

In summary, because the Town conceded that it did not possess sovereign immunity for McDaniel's sign claim, because the record reflects and the Town conceded that it "didn't produce any evidence" at trial concerning McDaniel's claim on which summary judgment had already been granted, and because we have held that McDaniel did not lose standing when in 2008 he transferred or sold his storage facility to an entity named MeMc I, LLC., we sustain the portion of McDaniel's first issue complaining that the trial court erred by dismissing his sign claim for want of jurisdiction.

### B. The Sewer Tap Fees and Building Permit Fees Claims

In his sewer tap fees claim, McDaniel did not challenge the validity of the City's ordinance. Instead, he asserted a declaratory judgment action seeking a declaration that the Town had miscalculated the fees he owed pursuant to the ordinance and asserted in a common law and constitutional equitable recoupment claim that he was entitled to reimbursement for the portion of the fees that were illegally and unconstitutionally assessed against him. The Town concedes that it overcharged McDaniel for the sewer tap fees, stating in its brief, "It is important to note that in this appeal the Town does not maintain that the

16

sewer tap fee was calculated correctly. The language of the ordinance and the proof regarding the way in which the fee was calculated suggest that the Town erred in its calculation." In his building permit fees claim, McDaniel likewise did not challenge the validity of the ordinance, but he sought a declaration that the Town had miscalculated the fees he owed under the ordinance and asserted a common law and constitutional equitable recoupment claim that he was entitled to reimbursement for the portion of the fees that were illegally and unconstitutionally assessed against him. Concerning the building permit fee claim, McDaniel pleaded that "Double Oak effectively charged $36,930 more than it was entitled to charge" for the building permit fees based on the type of buildings erected.

A person who pays government fees and taxes under business compulsion, duress, or implied duress has a valid claim for their repayment. *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005) (citing *Union Cent. Life Ins. v. Mann*, 158 S.W.2d 477, 479 (Tex. 1941)); *see Lowenberg*, 261 S.W.3d at 59 (rendering judgment for plaintiffs in declaratory judgment tax refund suit and explaining that city "cannot extract millions in unlawful fees and fines, decide the whole thing was a mistake, keep the money, and insist the whole matter is moot"); *Camacho v. Samaniego*, 831 S.W.2d 804, 812–14 (Tex. 1992) (holding plaintiffs entitled to refund of preconviction bail bond fee they had paid and remanding case for trial on damages); *Akin Prods. Co.*, 286 S.W.2d at 111–12 (holding that plaintiff was entitled to refund of taxes paid

under protest); *Crow*, 209 S.W.2d at 925 (rendering judgment that plaintiff recover taxes and charges paid to the city per its ordinance); *Gatesco, Inc. v. City of Rosenberg*, 312 S.W.3d 140, 144 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding "governmental immunity will not defeat a claim for declaratory or injunctive relief seeking the refund of illegally collected taxes or fees if the plaintiff alleges 'that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied'") (quoting *Nivens v. City of League City*, 245 S.W.3d 470, 474 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)); *Saturn Capital Corp. v. City of Houston*, 246 S.W.3d 242, 245 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (explaining that "Texas has long recognized . . . that sovereign immunity does not prevent a party who paid illegal government taxes and fees under duress from filing a lawsuit to seek their repayment"); *Appraisal Review Bd. of El Paso Cnty. Cent. Appraisal Dist. v. Fisher*, 88 S.W.3d 807, 811–13 (Tex. App.—El Paso 2002, pet. denied)[8] (holding that "courts have historically asserted jurisdiction over suits where a taxpayer alleges violations of

---

[8]Citing *Republic Ins. Co. v. Highland Park ISD*, 141 Tex. 224, 227–28, 171 S.W.2d 342, 344 (1943); *State, Cnty. of Bexar v. Southoaks Dev. Co.*, 920 S.W.2d 330, 335–36 (Tex. App.—San Antonio 1995, writ denied); *Inwood Dad's Club, Inc. v. Aldine ISD*, 882 S.W.2d 532, 537–38 (Tex. App.—Houston [1st Dist.] 1994, no writ); *City of Houston v. Harris Cnty. Outdoor Adver. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 822 (1995); *New v. Dallas Appraisal Review Bd.*, 734 S.W.2d 712, 714 (Tex. App.—Dallas 1987, writ denied); *Garza v. Block Distrib. Co.*, 696 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ); *City of Corpus Christi v. Arnold*, 424 S.W.2d 492, 496 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.); and *City of El Paso v. Howze*, 248 S.W. 99, 100–01 (Tex. Civ. App.—El Paso 1923, writ ref'd).

his/her constitutional rights").

The reason that these types of claims are not barred by governmental immunity has been succinctly articulated:

> Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Generally, a party suing a governmental entity must establish consent to sue, which may be alleged either by reference to a statute or to express legislative permission. *See Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex. 1970).

> However, where a claim for declaratory or injunctive relief is brought seeking the refund of illegally collected tax payments, governmental immunity will not apply if the taxpayer alleges that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied. *See Dallas County Cmty. College Dist. v. Bolton*, 185 S.W.3d 868, 876–79 (Tex. 2005) (holding that a taxpayer cannot bring a suit for the return of illegally collected taxes if the payments were made voluntarily); *see also Camacho v. Samaniego*, 954 S.W.2d 811, 822 (Tex. App.—El Paso 1997, pet. denied). The revenue generated from a tax determined to be illegal should not be treated as property of the State or municipality to which the principles of sovereign immunity apply, and an illegally collected fee should be refunded if paid as a result of fraud, mutual mistake of fact, or duress, without respect to waiver of sovereign immunity. *See Camacho,* 954 S.W.2d at 822; *Austin Nat'l Bank of Austin v. Sheppard,* 123 Tex. 272, 71 S.W.2d 242, 246 (1934). No legislative consent to sue is needed under these circumstances.

*Nivens*, 245 S.W.3d at 474; *see also Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 576–77 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (recognizing claim for repayment of fees not barred by sovereign immunity but holding plaintiffs did not adequately plead facts necessary to invoke jurisdiction under this doctrine).

Here, McDaniel pleaded and offered conclusive evidence that he had paid the invalid, illegal portion of the sewer tap fees and building permit fees under business compulsion, duress, or implied duress. The Town concedes it overcharged McDaniel concerning the sewer tap fees and concedes that McDaniel paid the amount he was overcharged. The amount of money that the Town overcharged McDaniel for the sewer tap fees and the amount of money that the Town allegedly overcharged McDaniel for the building permit fees are not treated as revenues belonging to the Town because McDaniel paid the fees under business compulsion or duress or implied duress, and sovereign immunity does not bar McDaniel's declaratory judgment action and suit for their recoupment. *See Bolton*, 185 S.W.3d at 877 (holding that "a person who pays government fees and taxes under duress has a valid claim for their repayment"); *see, e.g., Lowenberg,* 261 S.W.3d at 59 (rendering judgment for plaintiffs in declaratory judgment tax refund suit); *Akin Prods. Co*., 286 S.W.2d at 111–12 (holding that plaintiff was entitled to refund of taxes paid under protest); *Crow,* 209 S.W.2d at 925 (rendering judgment that plaintiff recover taxes and charges paid to the city per its ordinance); *Gatesco, Inc.*, 312 S.W.3d at 146 (holding trial court "had jurisdiction over appellants' claims disputing Rosenberg's imposition of water and sewer service fees, appellants' claims for declaratory relief related to Rosenberg's implementation and enforcement of its Code of Ordinances, appellants' claims for prospective injunctive relief related to Rosenberg's water and sewer service fees, and appellants' claims for costs and attorney's fees" and

20

remanding appellants' claim for recovery of overcharges because, unlike here, appellants did not plead that the overcharges were paid under duress, and appellants needed to be given an opportunity to replead); *Saturn Capital Corp.*, 246 S.W.3d at 245 (reversing trial court's grant of city's plea to the jurisdiction on Saturn's claim that city erroneously required Saturn to pay off demolition lien); *Nivens*, 245 S.W.3d at 474 ("where a claim for declaratory . . . relief is brought seeking the refund of illegally collected tax payments, governmental immunity will not apply if the taxpayer alleges that the payments were made as a result of fraud, mutual mistake of fact, [or] duress, whether express or implied"). McDaniel likewise pleaded an equitable claim for a refund of the fees he was overcharged by pleading that the overpayment violated his constitutional rights, and sovereign immunity does not bar this claim. *See, e.g.*, *Nivens,* 245 S.W.3d at 474.[9]

We sustain McDaniel's second issue and the remainder of his first issue claiming that the trial court erred by dismissing his sewer tap fees claim and his building permit fees claim for want of jurisdiction.

## VI. CONCLUSION

Having addressed and rejected the independent grounds for affirmance asserted by the Town, and having sustained McDaniel's two issues, we reverse

---

[9]Citing cases listed in footnote 8.

the trial court's order dismissing all of McDaniel's claims for want of jurisdiction. We remand this case to the trial court for further proceedings consistent with this opinion.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  March 1, 2012